THE STATE OF OHIO, APPELLEE, *v.* DARRAH, APPELLANT.

(No. 80-368—Decided November 19, 1980.)

*Mr. Eugene H. Nemitz, Jr.,* prosecuting attorney, for appellee.

*Mr. Thomas S. Haney,* for appellant.

CELEBREZZE, C. J.  In support of his argument that the charge against him should be dismissed, appellant contends that a weigh station sign is not a "traffic control device," and that he was unlawfully arrested for a misdemeanor not committed in the presence of the state trooper.

The threshold issue in this case is whether a weigh station sign is a traffic control device. For the reasons that follow, we hold that a weigh station sign is a traffic control device, the disobedience of which constitutes a misdemeanor.

R. C. 4511.01(QQ) essentially defines a traffic control

device as a sign for the purpose of regulating or guiding traffic.[2] R. C. 4511.10 provides, in relevant part:

"The department of transportation may place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are necessary to indicate and to carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, *or to regulate,* warn, or *guide* traffic." (Emphasis added.)

Thus, in light of the two aforementioned statutory provisions, it is clear that a sign, appropriately erected under the auspices of state authority, which "regulates" or "guides" traffic is a traffic control device within the context of R. C. 4511.01(QQ) and 4511.10.

At this point, it is also imperative to note that R. C. 5501.31[3] and 5511.02[4] charge the Director of Transportation with the responsibility to maintain, repair and preserve state highways, limited access highways and freeways.

Analyzing all the foregoing sections of the Revised Code *in pari materia,* we conclude that the Department of Transportation, in erecting a sign directing all trucks to enter a roadside weigh station, appropriately "regulates," directs, guides and controls the flow and tonnage of traffic

---

[2] R. C. 4511.01(QQ) reads as follows:

" 'Traffic control devices' means all signs, signals, markings, and devices placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic, including signs denoting names of streets and highways."

[3] R. C. 5501.31 provides, in relevant part:

"The director of transportation shall have general supervision of all roads comprising the state highway system. He may alter, widen, straighten, realign, relocate, establish, construct, reconstruct, improve, maintain, repair, and preserve any road or highway on the state highway system, and, in connection therewith, relocate, alter, widen, deepen, clean out, or straighten the channel of any watercourse as he deems necessary, and purchase or appropriate property for the disposal of surplus materials or borrow pits, and, where an established road has been relocated, establish, construct, and maintain such connecting roads between the old and new location as will provide reasonable access thereto."

[4] R. C. 5511.02 provides, in relevant part:

"The director of transportation may lay out, establish, acquire, open, construct, improve, maintain, regulate, vacate, or abandon 'limited access highways' or 'freeways' in the same manner in which the director may lay out, establish, acquire, open, construct, improve, maintain, regulate, vacate, or abandon highways. * * *"

consistent with its duty to maintain, preserve and otherwise protect the physical integrity of the various types of highways and roads in Ohio. See *State* v. *Kuno* (1976), 46 Ohio St. 2d 203, 205 (bypassing a weigh station sign is a misdemeanor). See, generally, *Carlton* v. *Riddell* (Ohio App. 1955), 132 N. E. 2d 772; *Federal Power Comm.* v. *Corp. Comm. of Oklahoma* (W. D. Okla. 1973), 362 F. Supp. 522, 532 ("regulate" means to lay down the rules by which a thing shall be done).

Finally, there is no merit to appellant's assertion that R. C. 4513.33, a specific provision pertaining to the weighing of vehicles, should prevail over R. C. 4511.10 and 4511.12, general provisions. Although this court has frequently ruled that the specific statute prevails over the general, there must also be an irreconcilable conflict between the provisions. *State* v. *Frost* (1979), 57 Ohio St. 2d 121, 124.

R. C. 4513.33 is a specific provision outlining the procedure for a police officer to stop and weigh a vehicle which the officer has reason to believe is unlawfully overloaded. Clearly, this is not the *only* way for a truck to be weighed. Another way is for the driver to comply voluntarily with a weigh station sign, as provided for in R. C. 4511.12. Thus, R. C. 4511.12 *supplements,* rather than contradicts, R. C. 4513.33. As such, both statutory provisions must be given legal effect.

The second issue in this cause concerns appellant's claim that he was "arrested" when the State Highway Patrol issued a traffic ticket to him for violating R. C. 4511.12.

Appellant essentially contends that, in receiving the traffic citation, he was unlawfully arrested for a misdemeanor by an officer who did not personally witness the commission of the violation. We acknowledge the precision of appellant's contention that a law enforcement officer may arrest for a misdemeanor pursuant to R. C. 2935.03[5] only when that officer has observed the commission of the offense. *State* v.

---

[5] R. C. 2935.03 provides, in relevant part:

"A sheriff, deputy sheriff, marshal, deputy marshal, police officer, or state university law enforcement officer appointed under section 3345.04 of the Revised Code shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained."

*Mathews* (1976), 46 Ohio St. 2d 72, 75-76; *State* v. *Lewis* (1893), 50 Ohio St. 179.

However, before this court can find that there has been an "illegal arrest," it must first be demonstrated that there has been, in fact, an arrest.

This court previously held in *State* v. *Barker* (1978), 53 Ohio St. 2d 135, 139, certiorari denied, 439 U. S. 913, as follows:

"The word 'arrest' is derived from the French 'arreter,' meaning to stop or stay, as signifies a restraint of a person. *Alter* v. *Paul* (1955), 101 Ohio App. 139, 141. An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State* v. *Terry* (1966), 5 Ohio App. 2d 122, 128, citing *State* v. *Milam* (1959), 108 Ohio App. 254, 268; * * * ." Cf. *Delaware* v. *Prouse* (1979), 440 U. S. 648, 59 L. Ed. 2d 660; *United States* v. *Robinson* (1973), 414 U. S. 218; *Adams* v. *Williams* (1972), 407 U. S. 143; *Terry* v. *Ohio* (1968), 392 U. S. 1; *Toledo* v. *Lowenberg* (1955), 99 Ohio App. 165.

Furthermore, an arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime. *United States* v. *Bonanno* (S.D.N.Y. 1960), 180 F. Supp. 71; *Patterson* v. *United States* (C. A. 5, 1951), 192 F. 2d 631, 633 (dictum), certiorari denied, 343 U. S. 951. See, also, 5 American Jurisprudence 2d 698, Arrest, Section 3; American Law Institute, Code of Criminal Procedure, Section 18.[6]

Under the particular facts of this case, the foregoing prerequisites of an arrest have not been met. The state trooper who issued the citation to appellant manifested no intent to take him into custody. Evidently, at no time did the appellant himself understand that he was under arrest. The record demonstrates that the appellant received a citation

---

[6] American Law Institute, Code of Criminal Procedure, 27, Section 18, provides:

"Arrest is the taking of a person into custody in order that he may be forthcoming to answer for the commission of an offense."

after a brief roadside confrontation.[7] At that point, appellant had the option to contest the ticket in Municipal Court or plead guilty and pay the $100 fine. He chose the former and was adjudicated guilty. We conclude that the appellant was never, at any point in his brief roadside confrontation with the state trooper, under arrest.

Accordingly, we reiterate our prior specific and unambiguous rejection of the concept that receipt of a traffic citation is the functional equivalent of an arrest. *State* v. *Holbert* (1974), 38 Ohio St. 2d 113, 116-117.

For all the foregoing reasons, we find that the appellant was not unlawfully arrested for a misdemeanor by an officer who did not personally witness the commission of the violation.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and STILLMAN, JJ., concur.

STILLMAN, J., of the Eighth Appellate District, sitting for DOWD, J.

---

[7] Apparently, appellant was permitted to proceed on his way immediately after receiving the citation.