Eric Qualey appeals the trial court's denial of his motion to suppress the results of his blood-alcohol test. Having found no error in the decision of the trial court, we affirm the trial court's judgment.
 I.
On March 20, 1997, around 3:07 a.m., Officer Craig Moore of the Kettering Police Department was dispatched to the scene of a one-car accident on Dogwood Trail in Kettering, Ohio. As he approached the scene, he observed Qualey and a companion walking along Dogwood Trail about one hundred and fifty yards from the accident. Officer Moore stopped Qualey and his companion to inquire if they were involved in the accident.
Qualey's face was bloodied from a cut above his eyebrow. As Officer Moore spoke with Qualey, he noticed a distinct odor of alcohol emanating from him, that his eyes were bloodshot, that his speech was slurred, and that he was unsteady on his feet. Because Officer Moore believed that Qualey exhibited signs of intoxication, he asked Qualey if he had been drinking and, if he had, how much. Qualey responded that he had between eight and ten beers to drink.
Moore also asked Qualey if he was the driver of the vehicle involved in the accident, and Qualey responded in the negative. Upon examination of the vehicle, however, Officer Moore found that the windshield in front of the driver's seat was broken and discovered eyebrow hair on the driver's side visor. Officer Moore determined that this evidence was consistent with Qualey's injury to his eyebrow.
Thereafter, paramedics arrived on the scene and transferred Qualey and his companion to the Kettering Medical Center with Officer Moore following behind. At the medical center, Officer Moore interviewed Qualey's companion first, assuming he would more readily offer information regarding the accident. Qualey's companion refused to cooperate, however. Moore then began questioning Qualey about who was driving the vehicle. Moore told Qualey that he had found eyebrow hair on the driver's side visor and that the eyebrow hair was consistent with his injury. Qualey responded, "Yeah, you got me, I was driving."
Thereafter, Officer Moore advised Qualey of his Miranda rights. Officer Moore then took out an Administrative License Suspension (ALS) form and began reading the back of the form to Qualey. The first sentence of that form begins with "You are now under arrest for operating a vehicle while under the influence of alcohol * * *." Officer Moore also advised Qualey that he was going to ask him to submit to a blood alcohol test, and that if he refused the test, his license would be suspended for a year. Officer Moore further informed Qualey of his right to obtain an independent test of his blood-alcohol content at his own expense.
Officer Moore asked Qualey if he agreed to submit to a blood alcohol test, and Qualey answered in the affirmative. Officer Moore then asked Qualey how long before his arrival on the scene had the accident occurred, and Qualey responded approximately one minute. Based upon Qualey's statement and the time the accident was reported, Officer Moore surmised that the accident occurred at approximately 3:06 a.m. Relying upon this information, Officer Moore determined that Qualey's blood could be drawn within two hours of the alleged violation as required by the Administrative License Suspension statute. Qualey's blood was drawn at 4:45 a.m., over twenty minutes before the two hour period would expire.
While still at the hospital, Officer Moore charged Qualey with driving under the influence of alcohol and cited him for failure to control a motor vehicle. Shortly thereafter, because Qualey was still under medical care, Officer Moore released Qualey on his own recognizance by giving Qualey a court date for the charge and a citation. It is unclear from the transcript whether Officer Moore ever specifically told Qualey that he was being released on his own recognizance.
Approximately two weeks later, Officer Moore received the blood test results from Miami Valley Regional Crime Lab indicating that Qualey had a blood alcohol content of .18 percent, which is in excess of that permitted by law. As a consequence, Officer Moore charged Qualey for driving a motor vehicle with a blood content in excess of the legal limit of 0.10 percent. Officer Moore served Qualey with this charge at his home.
On April 14, 1997, Qualey's counsel filed a motion to suppress the results of the blood test. After a hearing on the matter, the trial court overruled Qualey's motion. Qualey pled no contest to the charge of driving a motor vehicle in excess of the legal limit. Qualey now brings this timely appeal of the trial court's denial of his motion to suppress.
 II.
In his first assignment of error, Qualey argues that:
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.
Qualey first argues that the trial court erred in denying his motion to suppress the results of the blood alcohol test because Officer Moore did not have probable cause to arrest him for driving under the influence of alcohol. Qualey argues that a police officer may only request that an individual submit to a blood-alcohol test if the individual had been validly placed under arrest for driving under the influence of alcohol. Qualey argues that his arrest was not valid because Officer Moore did not have probable cause to believe that Qualey was impaired by alcohol. Rather, Qualey contends that Officer Moore only had reason to believe that he had consumed alcohol, which is insufficient to arrest an individual for driving under the influence of alcohol. Assuming Officer Moore lacked probable cause to arrest Qualey for that offense, Qualey argues that any evidence flowing from that illegal arrest, including the results of his blood-alcohol test, must be suppressed.
We find Qualey's argument to be unpersuasive. For probable cause to exist that an individual was driving under the influence of alcohol, the police officer must have some reasonably articulated indicia of intoxication as opposed to mere evidence of some alcohol consumption. State v. Taylor (1981), 3 Ohio App.3d 197. Generally, the usual physical characteristics of alcohol consumption, that is, the strong odor of alcohol, bloodshot eyes, flushed face, and slurred speech, are sufficient to give rise to reasonable suspicion of intoxication. State v. Finch (1985),24 Ohio App.3d 38. Nevertheless, those physical characteristics are insufficient by themselves to give rise to probable cause to arrest and individual for driving under the influence of alcohol.Id.
To have probable cause to arrest an individual for driving under the influence of alcohol, the police officer would need to have reasonably articulable evidence of impaired driving or impaired motor coordination. Taylor, supra. In other words, it is necessary that the police officer have reasonably articulable indicia of alcohol-induced impairment, and not just the appearance of alcohol consumption, in order to arrest an individual for driving under the influence of alcohol. Id. One method an officer may use determine whether the driver is impaired by alcohol is by using the police officer's reasonable suspicion of intoxication to require the individual to submit to field sobriety tests. Finch, supra.
Another method a police officer can use to determine whether a driver is impaired by alcohol is by combining the officer's reasonable suspicion of intoxication, gathered from the individual's physical indicia of alcohol consumption, with the fact that the individual was the driver of a car involved in a one-car accident. State v. Bernard (1985), 20 Ohio App.3d 375,376; accord Westlake v. Vilfroy (1983), 11 Ohio App.3d 26;Lakewood v. Gillett (May 11, 1995), Cuyahoga App. No. 94-C-3399, unreported. Absent any apparent explanation for the accident other than the driver's alcohol impairment, this is sufficient to give rise to probable cause that the individual is impaired by alcohol and to arrest an individual for driving under the influence of alcohol. Id. This is sufficient because the accident itself is evidence of impaired driving or impaired coordination. Id.
The Twelfth District court of Appeals in Fairfield v. Regner
(1985), 23 Ohio App.3d 79, determined, for example, that:
 "[T]he weight of authority appears to be that where a police officer comes to the scene of an accident wherein there was no observable driving but a suspect is found in or near the automobile with an odor of alcoholic beverage on or about his person, there is probable cause to arrest the suspect for driving under the influence of alcohol."
Similarly, we found in State v. Wilson (Nov. 7, 1997), Montgomery App. No. 16292, unreported, that a police officer had probable cause to arrest a suspect when it was late at night, there was an accident, police officer saw the suspect walking two hundred feet away from the accident, the police officer smelled a strong odor of alcohol emanating from the suspect, and the individual admitted to consuming four or five beers. In deciding that the police officer had probable cause to arrest the individual for driving under the influence of alcohol, we were persuaded by the fact that the police officer knew that the individual was likely the driver of the automobile, that the individual was attempting to leave the scene of the accident, and, based upon the officer's observation of the wreckage, the individual was likely at fault in the accident. We found that the individual's apparent fault in the accident along with the strong odor of alcohol indicated that his driving ability was impaired. We also found that his apparent flight from the scene of the accident could be reasonably attributed to the individual's awareness that he was under the influence of alcohol.
We find that the facts of the case sub judice are very similar to the facts in Wilson. In this case, Qualey's truck was involved in a one-car accident very late at night. From a review of the scene of the accident, Officer Moore determined that the accident was apparently caused by the driver missing a turn in the road, driving onto private property, and smashing into some trees. From these facts, it was very likely that the accident was the driver's fault, that is, the driver's failure to control his vehicle.
Furthermore, Qualey admitted that he was the driver of his truck and to consuming eight to ten beers that evening. Additionally, Officer Moore noticed that Qualey smelled of alcohol, that his eyes were bloodshot, that his speech was slurred, and that he was unsteady on his feet. In view of these facts, it was reasonable for Officer Moore to assume that Qualey initially lied about not driving his truck and was apparently fleeing the scene, and his truck, because he was aware that his driving was impaired by alcohol. We conclude that under the facts of this case Qualey's physical characteristics of alcohol consumption combined with his one-car accident gave Officer Moore probable cause to arrest him for driving under the influence of alcohol. The evidence of the accident, along with the physical characteristics of alcohol consumption, gave Officer Moore probable cause to believe that Qualey's driving and coordination were impaired. Hence, we cannot find that the trial court erred in denying Qualey's motion to suppress on this basis.
Qualey next argues that the blood alcohol test should have been suppressed on the basis that Qualey was never placed under arrest for the offense of driving under the influence of alcohol. Qualey argues that he was never properly placed under arrest for that charge because Officer Moore did not actually or constructively seize Qualey. More specifically, Qualey argues that Officer Moore did not seize him because he did not, for example, physically restrain Qualey in the hospital or tell him that he was not free to leave.
Although well-argued, we again are unpersuaded by Qualey's argument. An arrest can occur under either of two circumstances. This first of those circumstances is a formal arrest where the officer explicitly and unequivocally informs the subject that he or she is under arrest. The second, and less clear, circumstance is when a police officer performs a seizure of the subject that is tantamount to an arrest. A seizure is sufficient to give rise to an arrest when: 1) there is an intent to arrest; 2) under real or pretended authority; 3) accompanied by an actual or constructive seizure or detention; and 4) which is so understood by the person arrested. State v. Darrah (1980), 64 Ohio St.2d 22.
We find that Officer Moore formally arrested Qualey by expressly and unequivocally informing him that he was under arrest for the charge of driving under the influence of alcohol and by reading Qualey his Miranda rights. We further find that the elements used to determine whether a seizure is tantamount to an arrest are not necessary to be visited in the cases where a formal arrest has occurred. These indicia are only necessary when it is unclear whether an arrest has occurred. Here, there is no question that Qualey was formally arrested when he was explicitly notified that he was being placed under arrest and when he was read his Miranda rights. In instances like this, there does not need to be additional evidence of a seizure; the seizure is implicit in the fact that the individual has been explicitly been placed under arrest.
Nonetheless, even if it were necessary to review the four-part Darrah test in every case, whether it be a formal arrest or an informal arrest, we find that those factors have been satisfied in the present case. As to the first requirement, we find that Officer Moore expressed his intention to arrest Qualey when he expressly informed him that he was under arrest for the offense of driving under the influence of alcohol. We find that expressly informing an individual that he or she is under arrest and is being charged with a specific offense is sufficient to demonstrate that the officer had an intention to arrest the individual.
Moreover, we find that Officer Moore had the authority to arrest Qualey under Oregon v. Szakovits (1972), 32 Ohio St.2d 271. In that case, the Court concluded that a police officer may arrest an individual without a warrant where, based upon the facts of the case, the officer could reasonably conclude that a car involved in an accident had been driven shortly before the officer's arrival and the officer has probable cause to believe that the individual is intoxicated. A brief review of the facts confirms that these factors are satisfied in the present case.
Furthermore, we find that Officer Moore constructively seized Qualey when he informed him that he was under arrest. Clearly, it is implicit that one is unable to leave when one is informed that he or she is under arrest. The word arrest itself means that anindividual is deprived of his or her liberty by real or presumed legal authority. Blacks Law Dictionary, Sixth Edition, Arrest, p. 109.
Finally, we find that a reasonable person in Qualey's position would have understood that he or she was under arrest and was not free to leave. Officer Moore explicitly told Qualey that he was under arrest. Additionally, a reasonable person would have known that it is implicit that when one is told that he or she is under arrest that he or she is not free to leave.
We also note that unlike in the court in State v. Gorey
(1994), 68 Ohio Misc.2d 44, we find that a constructive seizure is sufficient to satisfy R.C. 4511.191(H)(1)(a), which sets forth the predicate requirements for requesting an individual to submit to chemical tests to determine the individual's blood-alcohol content. The court in Gorey determined that a constructive seizure is insufficient to satisfy the mandates of that statute because the statute requires that "the person arrested must havein fact been placed under arrest" for the officer to validly request that the individual submit to a chemical test. R.C.4511.191(H)(1)(a) (Emphasis added). The court interpreted the "in fact" language to mean that the legislature intended that the individual be actually, as opposed to constructively, seized.
We respectfully disagree with this interpretation of the statute. The statute does not require that the individual be "in fact" seized, rather it requires that the individual "in fact" be arrested. We find that the "in fact" language merely means that one must review the facts to determine whether the facts demonstrate that the individual was arrested; not that the individual was actually seized. The term arrest contemplates both actual or constructive seizures, and, under our reading of the statute, the legislature has merely required courts to determine whether the facts substantiate that an arrest has occurred, that is, whether the facts support that a formal or informal arrest actually occurred.
Qualey also argues that the results of the blood alcohol test should have been suppressed because, he claims, that the prosecution did not prove that his blood sample was taken within two hours of the alleged violation as required under R.C. 4511.19
(D). R.C. 4511.19(D) provides that a court may admit evidence regarding the concentration of alcohol in the defendant's blood as shown by a chemical analysis of blood that was withdrawn within two hours of the alleged violation. Qualey argues that there is no reliable evidence indicating that his blood was withdrawn within two hours of the time he was operating the motor vehicle.
Qualey argues that the facts show that Officer Moore arrived on the scene of the accident around 3:07 a.m. At that time, Officer Moore saw Qualey and his companion walking approximately one hundred and fifty yards from the accident. When Officer Moore later questioned Qualey as to how soon the accident had happened before he arrived at the scene, Qualey responded that it had happened approximately one minute prior to his arrival. Relying upon that information, Officer Moore placed the accident at around 3:06 a.m.
Using this recitation of the facts, Qualey argues that it is simply incredible that the accident only happened one minute before Officer Moore's arrival because that would not give sufficient time for the passerby to have reported the accident, for Officer Moore to respond to the dispatch, and for Qualey and his companion to walk one hundred and fifty yards away from the accident.
We find that this argument also lacks merit. It is clear from the transcript that Officer Moore used the time that the accident was reported rather than the time he arrived at the scene to judge whether the blood was being taken within the two hour limit. Officer Moore testified that the accident was reported at 3:07 a.m. and that he arrived soon thereafter. He further testified that Qualey told him that the accident had only occurred a minute before his arrival. Using the time the accident was reported and Qualey's statement that the accident had happened a minute before, Officer Moore placed the accident at 3:06 a.m.
Although the accident may not have occurred exactly one minute before Officer Moore's arrival, Qualey's statement to Officer Moore can reasonably be taken to mean that the accident occurred only a short time before Officer Moore's arrival. Furthermore, Qualey's indication that the accident had occurred shortly before the officer's arrival along with the time that the accident was reported indicate that the blood was taken well within the two hour limit. The accident would have had to have occurred over twenty minutes before it was reported for the two hour time to have expired, and there simply is no evidence to indicate anything other than the accident had occurred shortly before the accident was reported at 3:07 a.m. Thus, we cannot find that the trial court erred in denying Qualey's motion to suppress on this basis.
Finally, Qualey argues that the trial court erred in denying his motion to suppress the results of his blood alcohol test because the prosecution failed to lay all of the foundations and satisfy all of the conditions necessary for the admissibility of Qualey's blood test results at the suppression hearing. Qualey argues that all issues related to the admissibility of chemical tests must be resolved at the suppression hearing. Furthermore, Qualey contends that if the prosection fails to lay all the appropriate foundations and satisfy all of the conditions of admissibility at the suppression hearing, the evidence must be excluded at trial.
Qualey argues in particular that the prosecution failed to demonstrate that his blood was tested by means of one of the methods approved in the Ohio Administrative Code, that his blood has handled and collected in accordance with the procedures set forth under the Ohio Administrative Code, that the tests were performed by a laboratory that is in compliance with the Ohio Administrative Code, and that all laboratory and supervisory personnel were qualified under the standards set forth under the Ohio Administrative Code.
After reviewing the transcript and record, we find that this argument is devoid of merit. To sufficiently raise the issue of noncompliance with alcohol testing regulations in a motion to suppress, the defendant must state his legal and factual allegations of noncompliance with sufficient particularity to put the prosecution and court on notice of the issues to be decided.State v. Shindler (1994), 70 Ohio St.3d 54. A defendant does not properly raise the issue by merely alleging that administrative procedures were not followed. Id. Furthermore, absent a properly raised dispute, the prosecution is not required to prove that health regulations were complied with in the administration of a blood-alcohol test. Id. If a dispute is properly raised, however, the burden will rest upon the state to prove that the test was properly administered. Id.
In his motion to suppress, Qualey only argued that "Any chemical tests performed were not done in accordance with the time limitations and regulations imposed by the Ohio Department of Health and Chapter 3701-53-02 of the Ohio Administrative Code." Although we find that this may have been sufficient to put the prosecution and court on notice that Qualey was contesting whether the blood test was taken within the appropriate time limitation and whether OAC 3701-53-02 had been complied with, we cannot find that Qualey's assertion that the "regulations imposed by the Department of Health" had not been complied with sufficient to put the prosecution and court on notice of the particular legal and factual basis of Qualey's other claims.
In particular, we find that Qualey did not provide the prosecution and court with notice that he was also contesting the State's compliance with OAC 3701-53-03, 3701-53-05, 3701-53-06,3701-53-07, 3701-53-08, and 3701-53-09. To give the prosecution and court notice of his legal and factual allegations, Qualey would have had to set forth these specific regulation sections in his argument to the trial court. Furthermore, Qualey would have had to set forth some factual basis for his claimed violations of those sections.
Because we find that Qualey did not provide the prosecution and court with sufficient notice of these claims, we cannot find that the prosecution's burden of demonstrating compliance on those issues was implicated. Concomitantly, we cannot find that the trial court erred in denying Qualey's motion to suppress on this basis. The assignment of error is overruled.
 III.
In his second assignment of error, Qualey argues that:
 THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT WITHOUT TERMINATING THE RELATED ADMINISTRATIVE LICENSE SUSPENSION.
Qualey argues that the trial court punished him twice for the same crime in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions by sentencing him for driving under the influence and retaining his Administrative License Suspension. Qualey argues that the trial court should have terminated the Administrative License Suspension upon sentencing him driving under the influence. Qualey argues that because the court failed to do so, his punishment for the driving under the influence charge must be terminated.
After reviewing the trial court's order and entry, it is clear that the trial court did in fact set aside Qualey's Administrative License Suspension. Thus, we cannot find that Qualey's Double Jeopardy rights were violated. This assignment of error is overruled. Based upon the foregoing, the judgment of the trial court is affirmed.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
F. Jay Newberry
Timothy N. Tye
Hon. Larry W. Moore