OPINION
On appeal appellant, David Wolske, sets forth the following four assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS BASED ON THE FINDING THAT THE POLICE ENCOUNTER WAS CONSENTUAL [SIC] AND NOT AN INVESTIGATORY STOP OR SEIZURE.
"SECOND ASSIGNMENT OF ERROR
 "THE STOP AND SUBSEQUENT ARREST OF THE APPELLANT WAS A VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION BECAUSE THE STOP WAS NOT BASED ON A REASONABLE AND ARTICULABLE SUSPICION THAT APPELLANT WAS ENGAGED IN CRIMINAL ACTIVITY.
"THIRD ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE RESULTS OF APPELLANT'S BREATH TEST OBTAINED IN VIOLATION OF OHIO REVISED CODE SECTION 4511.191.
"FOURTH ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT GUILTY OF A VIOLATION OF REVISED CODE 4511.19(A)(1) AND REVISED CODE 4511.19(A)(3) BECAUSE A NECESSARY ELEMENT OF THOSE OFFENSES, NAMELY OPERATION, WAS NEVER PROVEN, NOR ALLEGED BY THE PROSECUTION."
The facts which are relevant to the issues raised on appeal are as follows. On June 9, 1997, a dispatcher for the Bowling Green Police Department received a telephone tip from an employee of Barney's in Bowling Green, Ohio, who had reported that a black semi-trailer cab with the letters "JAM" painted on the side was being driven north on State Route 25 by a possible drunk driver. Bowling Green City Patrolman Matthew Miles was dispatched to investigate the tip.
Officer Miles investigated the tip by driving up and down Route 25. Shortly thereafter, Miles spotted a black semi-trailer cab matching the tipster's description parked at the loading dock of a building owned by the Chemron Corporation.
Officer Miles parked his patrol car approximately forty to fifty feet in front of the truck, exited his vehicle, and proceeded on foot toward the parked truck. He did not turn on his overhead lights or police siren. As Officer Miles approached the truck the driver, later identified as appellant, got out of the cab and met him in the parking lot, a few feet from the truck cab.
As he approached the officer, appellant stated that he had just backed his truck up to the loading dock, in preparation for receiving a load the next morning. Upon speaking with appellant, Officer Miles noticed an odor of alcohol on appellant's person. He then asked appellant to submit to field sobriety tests. When appellant performed poorly on the tests, Officer Miles placed him under arrest and transported him to the Bowling Green police station, where he asked appellant to perform a breathalyzer test. After reading BMV form 2255, appellant voluntarily agreed to submit to the test, which revealed that he had a breath alcohol concentration of .160 grams per two hundred ten liters of breath. Appellant was then cited for operating a motor vehicle while under the influence of alcohol in violation of Bowling Green City Ordinance 73.01(A)(1) and operating a motor vehicle with a prohibited alcohol content in his breath in violation of Bowling Green City Ordinance 73.01(A)(3).[1]
On July 28, 1997, appellant filed a motion to suppress the results of the breathalyzer test and the sobriety test, as well as any statements "taken from or made by [appellant]." On August 5, 1997, a suppression hearing was held, at which testimony was presented by Officer Miles and Patrolman Richard E. Stokes.
At the suppression hearing, Patrolman Stokes testified generally as to the maintenance, calibration and reliability of the BAC Datamaster machine which was used to perform appellant's breathalyzer test.
Officer Miles testified at the suppression hearing that he engaged appellant in conversation when appellant first exited his truck. Miles stated that appellant told him that appellant had been at the BW-3 bar watching a ball game, and that he "had had a couple of beers over the last few hours while watching the game and shooting some pool." Officer Miles further stated that he did not observe appellant operating the vehicle. Miles also testified that another patrol car containing two more Bowling Green police officers arrived at the parking lot while he was giving appellant the sobriety tests. During cross-examination, Officer Miles was shown four photographs of the Chemron parking lot, from which he identified the area in which appellant's truck cab was parked. A sign in one of the photographs stated that the parking lot was "private property."
At the close of all the evidence, the trial court found from the bench that Officer Miles' initial encounter with appellant was consensual in nature, and that it occurred in a "private lot, open to vehicular travel publicly." The trial court further found that appellant was not in custody at the time Miles initially engaged him in conversation and that, based on appellant's statements and his poor performance on the sobriety tests, Miles had probable cause to place appellant under arrest. Accordingly, based on the totality of the circumstances, the trial court denied appellant's motion to suppress. Thereafter, appellant entered a plea of no contest to the two charges, and was subsequently found guilty. On August 12, 1997, appellant filed a timely notice of appeal.
Appellant's first and second assignments of error will be considered together since he asserts in both that the encounter between appellant and Officer Miles was an improper investigatory stop. In support thereof, appellant argues that the police officer did not have reasonable suspicion, based on an uncorroborated anonymous tip, to enter the Chemron parking lot, park his patrol car in front of appellant's truck, and question appellant.
In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275,277; State v. Fanning (1982), 1 Ohio St.3d 19. Where there is substantial evidence to support the factual findings of the trial court, its ruling will not be disturbed on appeal absent an error of law. DePew, supra.
The United States Supreme Court has defined three categories of police-citizen encounters: (1) a consensual encounter; (2) an investigatory stop; and (3) an arrest. Floridav. Royer (1982), 460 U.S. 491, 501-507.
It is well-settled that the Fourth Amendment is not implicated in the case of a consensual encounter. United Statesv. Mendenhall (1980), 446 U.S. 544, 553. Consensual encounters include many long-standing, routine police practices, which include approaching a person in a public place, engaging the person in conversation, requesting information from the person, examining the person's identification, and asking for the person's permission to search his or her belongings. Florida v. Rodriguez
(1984), 469 U.S. 1, 4-6. The hallmark of the consensual encounter is whether the police have restrained the person's liberty, by physical force or a display of authority, in such a way that a reasonable person would not feel free to walk away. Mendenhall,supra, at 554. The determination of whether a reasonable person would feel free to walk away is to be based on the totality of the circumstances of the case. Id.
In cases where the police-citizen encounter is such that a reasonable person would not feel free to leave, the encounter falls into the category of an investigatory stop. Terry v. Ohio
(1968), 392 U.S. 1. To warrant an investigative stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Anonymous tips "may provide the reasonable suspicion necessary to make an investigatory stop if sufficiently verified by police officers."State v. Halahan (1995), 108 Ohio App.3d 33, 37, citing State v.Campbell (1990), 68 Ohio App.3d 688. "Reasonable suspicion" has been defined as something more than an "inchoate or unparticularized suspicion or `hunch,'" but less than the level of suspicion required for probable cause. Terry, supra, at 27.
Finally, a police-citizen encounter falls into the category of an arrest if there is "(1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." State v. Darrah (1980),64 Ohio St.2d 22, 26. An arrest is valid under theFourth Amendment only if the officer has probable cause to believe the subject committed a crime or was about to commit a crime.Michigan v. Summers (1981), 452 U.S. 692, 700.
First, we note that Officer Miles did not "stop" appellant's vehicle, since it was already parked in the Chemron parking lot. In addition, Officer Miles testified that he parked his patrol car approximately forty to fifty feet in front of appellant's truck cab, and appellant voluntarily got out of the truck and met him in the parking lot, on foot. Officer Miles did not turn on his lights or siren, and the other two officers did not arrive on the scene until after appellant had begun taking the sobriety tests. Finally, appellant presented no evidence at the hearing, beyond a picture of a sign which designated the parking lot as the "private property" of the Chemron Corporation, that he had any expectation of privacy solely because he was parked in the loading dock area of the lot at the time he was approached by Officer Miles.
This court has reviewed the entire record of proceedings which was before the trial court and, upon consideration thereof and the law finds, based on the totality of the circumstances, that the encounter between Officer Miles and appellant was a consensual encounter for which Officer Miles did not need reasonable suspicion to approach and question appellant, and the trial court did not err by denying appellant's motion to suppress. Accordingly, appellant's first and second assignments of error are not well-taken.
Appellant asserts in his third assignment of error that the trial court erred by not suppressing the results of his breathalyzer test. In support thereof, appellant argues that the record contains no evidence that he was operating his vehicle "while under the influence of alcohol * * * on `a highway or any public or private property used by the public . . . for vehicular travel or parking;'" and the parking lot in which he was parked was private property.
R.C. 4511.191(A) provides, in relevant part:
 "Any person who operates a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking within this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine if arrested for operating a vehicle while under the influence of alcohol * * * or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine. The chemical test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person to have been operating a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking in this state while under the influence of alcohol * * * or with a prohibited concentration of alcohol in the blood, breath, or urine. * * *"
As to appellant's first argument, Officer Miles testified at the suppression hearing that, upon speaking to appellant, he noticed an odor of alcohol on appellant's person. Miles also testified that appellant told Miles he had had "a couple of beers" at the BW-3 bar in Bowling Green, after which he drove his truck from the bar to the Chemron parking lot, and that he was "just backing his truck up" to the loading dock when the officer arrived at the parking lot. Officer Miles further testified in detail as to appellant's poor performance on the field sobriety tests.
As to appellant's second argument, as previously stated, the record contains no evidence that appellant needed to obtain express permission to park in the loading dock area of Chemron's parking lot. Ultimately, however, the issue of whether or not Chemron's parking lot was "private property" is irrelevant, since R.C. 4511.191(A) refers to the status of the property on which appellant operated his vehicle, and not to the status of the property on which he was ultimately found and arrested by the police officer.
Upon consideration of the foregoing, we find that the record contains substantial evidence to support the trial court's finding that appellant was operating his vehicle "upon a highway or any public or private property used by the public for vehicular travel or parking" while under the influence of alcohol and, therefore, appellant's breath test result was not obtained in violation of R.C. 4511.191(A). Accordingly, the trial court did not err by denying appellant's motion to suppress on that basis, and appellant's third assignment of error is not well-taken.
Appellant asserts in his fourth assignment of error that the trial court erred by finding him guilty after his no contest plea was entered. In support thereof, appellant argues that the record contains no evidence that he "operated" his vehicle while under the influence of alcohol.
On consideration of our disposition as to appellant's third assignment of error, we find that appellant's fourth assignment of error is not well-taken.[2]
On consideration whereof, this court finds further that substantial justice has been done the party complaining and the judgment of the Bowling Green Municipal Court is hereby affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 Melvin L. Resnick, J.
CONCUR.
[1] Bowling Green City Ordinance 73.01(A)(1) is virtually identical to R.C. 4511.19(A)(1), and Bowling Green City Ordinance 73.01(A)(3) is virtually identical to R.C. 4511.19(A)(3).
[2] We also note that the record does not contain a transcript of appellant's plea hearing for our review. In the absence of a transcript, this court will presume the regularity of the trial court proceedings. State v. Roberts (1991), 66 Ohio App.3d 654,656.