OPINION
Defendant-appellant Reginald Whitfield appeals his conviction of cocaine possession which was entered in the Mahoning County Common Pleas Court after he pled no contest. Prior to pleading, appellant filed a motion to suppress raising the following three alternative arguments: police officers lacked reasonable suspicion to pursue appellant in order to conduct an investigatory stop; the investigative stop became an illegal arrest once appellant was handcuffed; the police officer failed to articulate a reason for believing that appellant was armed and dangerous in order to justify a pat-down search. The trial court overruled appellant's motion. For the following reasons, the trial court's judgment is affirmed.
 STATEMENT OF FACTS
On September 2, 1998, Youngstown Police Officers Conroy and Kelly received a radio call dispatching them to a vacant house at 1681 Poland Avenue where it was reported that people in or near the house were using drugs. Apparently, drug use at this location was the source of previous complaints. When the officers arrived, they spotted four individuals behind the vacant house. When these individuals noticed the officers, they fled.
Officer Conroy pursued appellant for approximately sixty yards. When he caught up with appellant, he handcuffed him, walked him fifty feet to Officer Kelly and began pursuing another individual that he subsequently caught. After Officer Kelly was presented with appellant, he performed a pat-down search and felt two rocks of crack in appellant's front shirt pocket. Thereafter, a full search incident to arrest was conducted, which revealed more crack cocaine.
Thereafter, appellant was indicted for fifth-degree felony possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a). Appellant filed the aforementioned suppression motion. A suppression hearing was conducted at which both officers testified. After the court denied the motion, appellant pled no contest to the crime as charged. The court later sentenced appellant to ten months incarceration. The sentence was stayed pending the within appeal.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth three assignments of error, the first of which contends:
 "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BY HOLDING THAT THE PURSUIT OF THE DEFENDANT-APPELLANT BY POLICE WAS WARRANTED UNDER THE INVESTIGATORY PROVISIONS OF TERRY V. OHIO."
While police officers need probable cause to arrest an individual, officers may investigate by briefly detaining an individual if they possess a reasonable and articulable suspicion that criminal activity is afoot. Terry v. Ohio (1968), 392 U.S. 1, 21-22. Although the officer must articulate more than an unparticularized suspicion or hunch, reasonable suspicion to make a stop is based upon a minimal level of objective justification. Illinois v. Wardlow (2000), 120 S.Ct. 673, 676. The justification is viewed in light of the totality of the circumstances.State v. Bobo (1988), 37 Ohio St.3d 177, 180.
Appellant alleges that the officers lacked reasonable suspicion that he was engaging in criminal activity, and thus they were not permitted to pursue him when he began to run. The state counters that reasonable suspicion to stop existed under the totality of the circumstances. Specifically, the state points to the fact that a police dispatcher directed the officers to investigate drug use at an abandoned house where drug use is common and that a group of four people behind the house fled the scene upon noticing the officers.
A recent United States Supreme Court decision is dispositive of the issue. In Wardlow, the defendant fled upon seeing police vehicles arrive in a high crime area of Chicago. Two officers pursued the defendant, caught up with him, stopped him and conducted a pat-down search for weapons. A gun was discovered, and the defendant was arrested. The appellate court and the Illinois Supreme Court held that the officers lacked reasonable suspicion to pursue and stop the defendant. However, the United States Supreme Court reversed. The Court held that an individual's presence in a high crime area combined with unprovoked flight upon arrival of police officers create sufficient justification for an officer's belief that the individual is involved in criminal activity. Wardlow, 120 S.Ct. at 676. Hence, a Terry stop in such a situation is warranted.
In the case at bar, we have nearly the same fact pattern, i.e. presence where drug use is common and unprovoked flight upon the arrival of police. We also have additional facts supporting a finding of reasonable suspicion. As noted by one of the officers, appellant was trespassing on property that had been red-tagged. Additionally, the area, known to be a place of drug use, encompassed a specific address rather than an entire neighborhood. Further, the officers received a police dispatch advising them that people were using drugs at that moment near the vacant house, which by itself may be insufficient to give rise to reasonable suspicion since it was generated by an anonymous tip, but when combined with the other supporting facts is a relevant factor. See Florida v. J.L. (2000),120 S.Ct. 1375, 1377. Based upon the totality of these circumstances, the officers possessed reasonable suspicion to pursue and detain appellant. Accordingly, appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BY HOLDING THAT THE DEFENDANT-APPELLANT WAS NOT UNLAWFULLY ARRESTED WHEN HE WAS HANDCUFFED BY POLICE AND NOT FREE TO LEAVE POLICE CONTROL."
Appellant states that, even if the officers had reasonable suspicion to stop him, the officers lacked probable cause to arrest him. He then alleges that the act of placing handcuffs upon him turned an investigatory stop into an arrest. The state counters that the handcuffs were a reasonable means of detaining appellant in order to conduct the investigatory stop under the circumstances that existed in this case.
A seizure, as opposed to a consensual encounter, generally occurs when a reasonable person under the circumstances would believe that he was not free to go. United States v. Mendenhall (1980), 446 U.S. 544, 554. Upon being handcuffed, a reasonable person would believe that he was not free to go. However, not all seizures constitute arrests. Terry,392 U.S. at 16. An investigatory Terry stop is a seizure that does not rise to the level of an arrest. An arrest, which must be supported by probable cause to be valid, is characterized by four elements: (1) an intent to arrest; (2) under real or pretended authority; (3) accompanied by actual or constructive seizure or detention; (4) which is so understood by the person arrested. State v. Barker (1978), 53 Ohio St.2d 135, 139. See, also, State v. Darrah (1980), 64 Ohio St.2d 22, 26.
The missing element in the case at bar is an intent to arrest. Admittedly, under certain circumstances, the act of handcuffing may
manifest the officer's intent and cause an investigatory stop to ripen into an arrest. However, this act does not automatically convert a stop into an arrest. See State v. Benedict (Nov. 3, 1995), Washington App. No. 94CA28, unreported (citing a variety of federal circuit court cases that stand for this proposition). In some cases, the act of handcuffing may constitute a reasonable means to detain an individual during an investigatory stop. See State v. Jones (Dec. 3, 1999), Hamilton App. No. C-990125, unreported, 4. See, also, State v. Nelson (1991),72 Ohio App.3d 506, 509-510 (Corrigan, J., dissenting). One must look at the totality of the facts and circumstances in making such a determination.
The present case involved a spur of the moment situation involving the fleeing of four individuals for whom there was reasonable suspicion to stop. Officer Conroy needed to quickly terminate the chase of appellant in order to chase another individual. He desired to safely present appellant to Officer Kelly who would actually conduct the investigatory portion of the Terry stop. Due to the prior unprovoked flight upon making eye contact with the officers, the likelihood was great that appellant would flee at first chance if not handcuffed. Under the totality of the facts and circumstances in the case at bar, we hold that Officer Conroy's act of handcuffing appellant did not convert the investigatory stop into an arrest. As such, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error provides:
 "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BY HOLDING THAT THE STOP AND SUBSEQUENT SEARCH OF THE DEFENDANT-APPELLANT WAS WARRANTED UNDER PROVISIONS OF TERRY V. OHIO EVEN THOUGH THE OFFICER DID NOT SPECIFICALLY ARTICULATE REASONS HE FEARED FOR HIS SAFETY."
Under this assignment, appellant argues that even if there existed reasonable suspicion to chase and stop him and even if the act of handcuffing him was an appropriate part of the investigatory stop, Officer Kelly failed to articulate a reason for conducting a frisk of appellant's person. Appellant reminds us that at the time the frisk was performed by Officer Kelly, he had already been handcuffed by Officer Conroy.
Conducting an investigatory stop and performing a frisk during that stop are two distinct acts. State v. Green (Sept. 22, 1995), Mahoning App. No. 93CA100, unreported, 3. Thus, even if the stop is valid, the frisk may not be. The protective sweep of a detainee's outer clothing may only occur if the officer reasonably believes that the detainee is armed and dangerous. Terry, 392 U.S. at 24. An individual may not be frisked on a belief that he possesses drugs; the belief must be that the individual possesses a weapon. Id. at 29. Whether a frisk is justified depends on the totality of the circumstances. Bobo, 37 Ohio St.3d at 182. Some of the relevant circumstances include furtive movements, a noticeable bulge which could be a weapon, and the officers' familiarity with an area that is known for a high incidence of drug or other criminal activity.
Although the United States Supreme Court in Wardlow held that suppression of evidence was not required where officers chased a defendant who fled after seeing police arrive in a high crime area, the Court specifically stated that the only issue before it was the propriety of the stop. Wardlow, 120 S.Ct. at fn. 2 (stating, "we express no opinion as to the lawfulness of the frisk independently of the stop"). Hence,Wardlow is not particularly instructive on this issue.
As to the officer's articulation of a reason for believing appellant was armed and dangerous, the following excerpt is relevant:
 "Q. You say that you gave him a frisk — or a pat down for your own safety?
A. Yes.
 Q. The only reason why you gave him this pat down and you feared for your safety was because you saw Mr. Whitfield and three other people running from behind the house?
 A. Well, the reason I gave him the pat down frisk was because my partner was still chasing somebody, so we still had three other people we were looking for. So he was standing there with me by myself, so that's why I gave him the frisk pat down.
 Q. My question is this: The only reason why you gave Mr. Whitfield a pat down for your safety was because he ran when he saw the police?
 A. Yes, because four other people ran, right." (Tr. 26-27).
We must determine whether a reasonably prudent person under the totality of the circumstances known to Officer Kelly would have been warranted in the belief that appellant was armed. Terry,392 U.S. at 27. Specifically, the issue is whether an officer has a reasonable belief that an individual may be armed where that individual is trespassing by loitering behind a vacant house known to attract drug users and that individual flees with three others at the sight of officers who have been dispatched to the house to investigate an anonymous report of drug usage.
The officer need not artfully articulate his justification, but there must be evidence in the record that the officer was aware of specific facts that would suggest that he may be in danger. Ybarra v. Illinois
(1979), 444 U.S. 85, 93; State v. Evans (1993), 67 Ohio St.3d 405. 413. The end result should strike a balance between the need to safeguard an individual's right to be free from unreasonable searches and seizures and the need to protect officers from harm as they legitimately investigate their reasonable suspicions that criminal activity is afoot.
Prior to reviewing the totality of the circumstances in the present case, we shall briefly set forth a sampling of case law. In the landmark case of Terry v. Ohio, the United States Supreme Court upheld a stop and frisk conducted after an officer noticed two individuals walking back and forth past a store in a manner that made it appear they were planning a robbery. In Bobo, the Supreme Court of Ohio held that officers conducted a valid stop and frisk after the defendant, who was in a car parked in a high crime area, looked at the officers and then bent down as if to hide something.
The case of State v. Johnson (Aug. 14, 1996), Mahoning App. No. 94CA210, unreported, has a factual background that is similar to the case at bar. In Johnson, the defendant was loitering on a corner that is known to have a high incidence of drive-by drug sales. Upon sighting the police, the defendant made a furtive movement and removed an object from his waistband and placed it in his back pocket. The officers frisked the defendant and found a gun. This court upheld the search as valid under the totality of the circumstances. Id. at 2.
In reviewing the facts in the case at hand, we initially note that the fact that appellant was handcuffed does not negate the fact that he may be armed. It is possible for a handcuffed individual to access a weapon. As for specific facts in the record and known to the officer which justified the frisk, the state points to many of the same facts that gave rise to a reasonable suspicion to stop. For instance, drug use at the vacant house was a common call. A radio dispatch reported drug use at the house at that moment. Appellant was trespassing at a vacant house that had been red-tagged. As the officers approached the house, four individuals fled from the back after noticing that the officers were approaching. Officer Conroy chased appellant, caught him and presented him to Officer Kelly in a field near the vacant house from which appellant had recently fled. Three associates of appellant were still in the process of fleeing. Officer Convoy immediately ran away to catch another individual, leaving Officer Kelly by himself without the protection of his vehicle or other cover. One must also take consideration of Officer's Kelly's ten years of experience as a police officer and his involvement in the drug task force and the violent crimes task force.
Finally, it has been noted that weapons are often involved in drug transactions. See State v. Williams (1990), 51 Ohio St.3d 58, 62 (where the court upheld a search and stated that a factor in support of the validity of the search was that individuals involved in marijuana trafficking are likely to be armed and dangerous). See, also, Jones,supra at 4 (stating that it is naive not to associate drugs with guns). The officer had a reasonable suspicion to investigate possible drug activity. Therefore, considering all relevant factors, it was reasonable for that officer to determine, for his own safety, whether the detainee was in possession of a weapon.
Considering the totality of the facts and circumstances known to Officer Kelly at the time of the frisk, the reasonable inferences that can be drawn therefrom and the comparable fact scenarios in other cases, we hold that the frisk of appellant was valid. Therefore, this assignment of error is overruled.
For the foregoing reasons, the trial court's judgment is hereby affirmed.
 _________________ VUKOVICH, J.
COX, P.J., dissents; see dissenting opinion, WAITE, J., concurs.