[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} The defendant-appellant, Cheryl Hatter, appeals from the order of the trial court denying the appeal of her administrative license suspension. The suspension was imposed upon Hatter following her refusal to submit to a chemical test of her blood after a car accident that led to a DUI charge against her. In her single assignment of error, she alleges that the trial court erred by denying her ALS appeal because, at the time she refused the test, she had not been placed under arrest, and that, without an arrest, Ohio's implied-consent law could not have been invoked. We disagree.
 {¶ 3} R.C. 4511.191(A) codifies Ohio's implied-consent law. Under the law, a person is deemed to have given consent to the administration of a chemical test to determine his or her level of alcohol consumptionprovided that the person has first been arrested for driving under the influence. As this court has recently noted, "Given the importance of an arrest for DUI in triggering the statutorily implied consent, an entire body of case law has arisen on the arrest requirement under R.C.4511.191(A). Generally, four elements must coalesce in order for their to be an arrest under Ohio law: (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by some form of actual or constructive seizure or detention, (4) so that the person understands that he or she is not free to leave." State v. King (Mar. 28, 2003), 1st Dist. No. C-010778, citing State v. Darrah (1980), 64 Ohio St.2d 22, 26,412 N.E.2d 1328.
 {¶ 4} In the instant case, police officer Gary Schloemer testified that he was dispatched to the scene of a car accident at approximately eight o'clock on the evening of November 10, 2002. Arriving at the scene less than a minute later, he saw Hatter's red Ford pickup truck with severe front-end damage, as well as two telephone poles knocked over in the vicinity of a White Castle restaurant. Directed by witnesses, Schloemer went into the White Castle and knocked on the door to the bathroom, where Hatter was apparently tending to her injuries. He stated that when Hatter came out of the bathroom, he detected a strong odor of alcohol and asked her if she had been drinking. According to Schloemer, Hatter replied, "Yes, but only three."
 {¶ 5} Schloemer testified that, as they walked out of the restaurant to a life-squad vehicle, Hatter told him, in slurred speech, that another vehicle had struck her truck. He testified that because she claimed injuries to her ankle and stomach and expressed a desire to go to the hospital, she was placed in the back of the emergency vehicle. Schloemer testified that by that point he had formed an opinion that the accident had been caused by Hatter's impaired judgment resulting from alcohol consumption. Accordingly, while Hatter was lying upon a cot, Schloemer sat on the bench next to her and read to her an ALS form that contained the following first line: "You are now under arrest for operating a vehicle while under the influence of alcohol and a drug of abuse." Schloemer testified that by reading this line to Hatter he was, in fact, informing her that she was under arrest. He stated that Hatter became "very upset" and told him that she would not say anything further until after she had talked to an attorney.
 {¶ 6} Schloemer did not go to the hospital in the emergency vehicle with Hatter. He testified that it was instead part of his normal practice, when appropriate, to allow a person whom he had just arrested to seek medical treatment before placing them in formal custody. Asked why he did so, he replied, "For their safety." He denied having any concerns about Hatter trying to abscond. He stated that he returned to the police station to get something and then proceeded to the hospital. At all times, he testified, he maintained an ability to communicate with the EMS personnel. He stated that they would have notified him if Hatter had attempted to go elsewhere.
 {¶ 7} At the hospital, Hatter talked to an attorney and solidified her resolve to refuse any chemical test. Schloemer again read Hatter the ALS form. Somewhat at odds with his earlier testimony, Schloemer stated, "So at that point it was decided she was going to be arrested."
 {¶ 8} Hatter first argues that Schloemer had no intent to arrest her until after she had refused the test the second time at the hospital. Hatter's argument receives some support from Schloemer's statement about what occurred at the hospital. But the trial court found, and we cannot disagree, that Schloemer had in fact placed Hatter under arrest when he read her the ALS form in the back of the EMS vehicle. Concededly, as this court has held, the mere rote recitation of the form language, absent an intent to arrest, is insufficient to trigger the implied-consent law. See King, supra. However, it is clear from Schloemer's testimony that when he read to Hatter from the form in the back of the emergency vehicle, it was his intent to inform her that she was under arrest for driving under the influence. He testified that he had, by that point, dismissed the notion of another vehicle striking Hatter's truck and had concluded, instead, that the accident had resulted from Hatter driving while impaired. It would appear also that Hatter understood that she was being placed under arrest, which was why she became upset and insisted upon her right to seek counsel.
 {¶ 9} Hatter further argues that Ohio's implied-consent statute requires that she have been placed "in fact" under arrest, meaning, in her view, that she must have been in actual physical custody — i.e., some form of physical restraint — in order to trigger the implied-consent law. In other words, Hatter argues that any form of "constructive custody" was insufficient for the purposes of the statute. We disagree. Although each case must be decided on its facts, we are not persuaded that the "in fact" language of R.C. 4511.19(H)(1)(a) was intended to adopt a definition of an arrest necessarily different from that set forth in Darrah. There does not appear any sound reason why the legislature would have imposed the requirement of an actual physical seizure or restraint. To impose such a requirement would severely handicap the police and would be largely unworkable in situations in which the defendant requires immediate medical care. It is clear from Schloemer's testimony that he allowed Hatter to proceed to the hospital out of laudable concern "for her safety," but that he considered her to be in his custody and would have been notified and taken action — if she had attempted to break that custody.
 {¶ 10} In sum, we hold that Hatter was, in fact, arrested prior to the request that she submit to a chemical test, and that her refusal violated Ohio's implied-consent law. Accordingly, the trial court did not err in refusing to overturn her administrative license suspension. The judgment of the trial court is, therefore, affirmed.
 {¶ 11} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
SUNDERMANN, P.J., DOAN and GORMAN, JJ.