[Cite as *State v. Turic*, 2011-Ohio-3869.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                   :          C.A. CASE NO. 2010 CA 35

v.                                               :          T.C. NO.    09CR692

MICHELLE M. TURIC                                :          (Criminal appeal from
                                                            Common Pleas Court)

    Defendant-Appellant                  :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___5th___ day of ____August____, 2011.

. . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

MICHELLE M. TURIC, 1563 Emmons Avenue, Dayton, Ohio 45410
    Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Michelle Turic was found guilty by a jury in the Greene County Court of Common Pleas of theft of property valued at more than $500 but less than $5,000.[1] Turic

---

[1] Although the indictment and the verdict form characterized the offense as "Theft," the trial court's judgment entry described the offense as "Complicity to Theft." This discrepancy is not important for purposes of this appeal.

was sentenced to thirty days in jail and to community control for five years, and she was ordered to pay restitution in the amount of $507. She appeals, pro se, from her conviction.

I

{¶ 2} The State's evidence established that, on two dates in October 2009, while working as a cashier at Home Depot in Beavercreek, Ohio, Turic pretended to charge a customer for all of the items in his cart but, in fact, allowed him to leave the store after collecting payment for only a small fraction of the amount owed. A total of three transactions was at issue, all of which involved the same customer. The transactions were recorded on video and by the store's computer system.

{¶ 3} Pursuant to the store's security measures, a Home Depot asset protection officer, Jason Pierce, was alerted to the transactions because relatively expensive items had been scanned and then voided. Pierce reviewed the video and the computerized receipts generated from the transactions. He concluded that, although Turic had behaved as if she were scanning all of the items in the cart, in each transaction the customer had paid only a few dollars for substantial amounts of merchandise before leaving the store with the items. When Pierce and the store manager confronted Turic about the transactions and she offered no acceptable explanation for the substantial discrepancies, they called the police.

{¶ 4} Turic was indicted for theft of property valued at more than $500 but less than $5,000, a felony of the fifth degree. She pled not guilty, and the matter went to trial in March 2010. Turic was represented by an attorney at trial. She was found guilty by a jury and was sentenced as described above.

{¶ 5} Turic raises five assignments of error on appeal. We note that Turic did not

object in the trial court to many of the alleged errors raised in her brief, so she has waived all but plain error. *State v. Smith*, Greene App. No. 2010-CA-36, 2011-Ohio-2568, ¶25, citing *State v. Williams* (1996), 74 Ohio St.3d 569, 573. However, because she also claims that she was denied the effective assistance of counsel, we will address the substance of these arguments.

II

**{¶ 6}** In her first assignment of error, Turic contends that her due process rights were violated by the State's failure to disclose certain aspects of Pierce's testimony, which she characterizes as exculpatory, as required by *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Specifically, she claims that the State should have disclosed that Pierce was "parked right next to the guy [the customer]" in the parking lot of Home Depot after the third transaction. She claims that knowledge of this fact would have allowed her "to form an intelligent and persuasive attack" on Pierce's testimony and to "determine whose responsibility it was for the return of these items."

**{¶ 7}** After viewing the video of the first two suspicious sales, but before confronting Turic, Pierce spotted the customer who had participated in those transactions in the store. The customer wore the same hat and glasses as he had in the video. After alerting a store supervisor to watch the man, Pierce exited the store and went to his car in the parking lot to watch for the man's departure.[2] The man loaded the merchandise into a car that was parked next to Pierce's car, but Pierce did not attempt to confront the man or stop

---

[2] Pierce testified that he behaved this way, in part, because he was due to leave the store for the day, and he did not want Turic to change her behavior because he acted suspiciously.

the vehicle. Pierce was unable to record the license plate number.

{¶ 8} Turic's argument suggests that, if she had known before trial of Pierce's observation of the customer in the parking lot, she could have used this information to challenge his own role in the prevention of the theft or his "responsibility" in failing to recover the merchandise. She apparently argues that if Pierce had detained the individual and obtained the receipts for the merchandise in his cart, these receipts would have shown that the individual had lawfully purchased the merchandise (at another register), which might have helped to establish that Turic did nothing unlawful. However, this is all speculation not supported by the record. Moreover, there is no indication that any such potentially exculpatory statement exists, so the State cannot be faulted for not disclosing it. Pierce's mere observations in the parking lot were not exculpatory, and the State did not violate Turic's due process rights by failing to disclose this aspect of his testimony before trial.

{¶ 9} Turic also argues that the State "engaged in extreme delay and lack of responsibility" by providing the bill of particulars on the eve of trial. However, Turic's attorney did not object or request a continuance when the bill of particulars was provided. More importantly, Turic has not advanced any argument that she was prejudiced by the timing of the State's response.

{¶ 10} Turic contends that the prosecutor gave a misleading definition of "reasonable doubt" during voir dire. Her argument relies, however, on a portion of the transcript that is not part of the record in the case. In the official transcript, the voir dire of the jury is omitted; Turic has attached additional pages of transcription to her brief. Because the court reporter did not certify these pages as required by App.R. 9(A), we cannot rely on these

pages.

{¶ 11} According to Turic, in explaining that "beyond a reasonable doubt" does not mean beyond all doubt, the prosecutor allegedly compared the State's role in building the case, including meeting the burden of proof, to assembling a puzzle. Specifically, the prosecutor allegedly compared reasonable doubt to a jigsaw puzzle of the Mona Lisa that would be recognized before every piece was in place. Similarly, she asked the jury to picture someone standing behind a brick wall, and she described her role as knocking out bricks until the jury could clearly see who was standing there.

{¶ 12} Numerous courts have discussed attempts to elaborate on the meaning of "reasonable doubt." See, e.g., *People v. Malmenato* (1958), 14 Ill.2d 52, certiorari denied (1958), 358 U.S. 899, 79 S.Ct. 222, 3 L.Ed.2d 148 (commenting that attempts to define reasonable doubt ought to be discontinued); *Winegart v. Indiana* (1996), 665 N.E.2d 893. Sometimes analogies can distort its meaning. See, e.g., *People v. Katzenberger* (2009), 178 Cal.App.4th 1260 (where attorney used power point demonstration consisting of an eight-piece jigsaw puzzle of the Statue of Liberty and argued that the jury needed only six pieces to be convinced beyond a reasonable doubt that the picture was the iconic image); *United States v. Pungitore* (C.A.3, 1990), 910 F.2d 1084 (where both the prosecutor and defense counsel analogized the case to a jigsaw puzzle but disagreed about how many pieces would have to be missing in order for reasonable doubt to exist or not exist).

{¶ 13} This topic is no doubt worthy a law review article.[3] Suffice it to say, we look

---

[3] See, for example, Lillquist, Recasting Reasonable Doubt: Decision Theory and the Virtues of Variablility (November 2002), 36 U.C. Davis L. Rev. 85; Power, Reasonable Doubt and Other Doubts: The Problem of Jury Instructions (Fall 1999), 67 Tenn.L.Rev. 45.

with disfavor on attorneys' or judges' uses of examples to illustrate their own subjective conception of reasonable doubt. The Ohio Revised Code contains a definition: "'Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). This definition "correctly conveys the concept of reasonable doubt and is not an unconstitutional dilution of the State's burden to prove guilt beyond a reasonable doubt." *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, ¶61. And courts are advised against amplifying this definition. *State v. Van Gundy* (1992), 64 Ohio St.3d 230, 235. Further attempts to "clarify" the term by example, analogy, metaphor, or simile are ill-advised.

{¶ 14} However, the trial court instructed the jury that the court would set forth the law to be applied to the case, and it correctly defined reasonable doubt shortly after voir dire and in the concluding jury instructions. We cannot find that the prosecutor's comments during voir dire unfairly misled the jury with respect to the burden of proof, and we are unpersuaded that Turic suffered any prejudice by the prosecutor's inapt analogies.

{¶ 15} Further, Turic contends that the State should not have been allowed to change the indictment from theft to complicity to commit theft on the first day of trial, because doing so prevented her from intelligently preparing for trial. It does not appear from the record

that the indictment was actually changed, but the State informed the court on the day of the trial that it was "proceeding under a complicity theory." We infer that Turic objects to the State proceeding under a theory of complicity after she had been indicted as a principal. But R.C. 2923.03(F) provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." And the State's theory of the case – that Turic had engaged in theft by deception with the same customer on several occasions – never changed. Turic's argument that she would have prepared differently if she had been indicted for complicity rather than theft is without merit.

{¶ 16} Finally, Turic contends that the State did not comply with the court's order for a separation of witnesses in that Officer Molnar, who investigated the offense and testified at trial, remained in the courtroom throughout the trial.

{¶ 17} The rule that provides for the separation of witnesses, Evid.R. 615, "does not authorize the exclusion of *** an officer or employee of a party that is not a natural person designated as its representative by its attorney." Evid.R. 615(B)(2). Although the prosecutor did not request on the record that Officer Molnar be designated as the State's representative, she did refer to him as "my officer" when she introduced him to the jury, and the court appears to have assumed that he was the State's designated representative. Officer Molnar clearly served in that capacity, even though he was not formally designated as the State's representative. As such, the trial court's order for the separation of witnesses was not violated and, even if it were, there is no suggestion of prejudice to Turic.

{¶ 18} The first assignment of error is overruled.

III

{¶ 19} In her second assignment of error, Turic argues that the trial court erred in failing to rule on her "Request that Indictment Be Cured of Defects" and in failing to instruct the jury on "lawful arrest and complicity." She also argues that the trial court erred in overruling her motion to dismiss "where evidence supported acquittal" and because the evidence did not establish that the value of the stolen property was more than $500. Finally, Turic claims that the State failed to prove the necessary mental state (mens rea).

{¶ 20} Turic moved to cure the indictment "because it fail[ed] to state an accurate amount of loss." In her motion, she observed that "there is no description anywhere of what particular items she is accused of stealing," and she notes the unlikelihood that "[m]erchandise sold at a store [which] is typically priced at odd amounts" would total "$540.00 even."[4] It appears that the $540 figure was referenced in the discovery packet, because that amount does not appear in any of the documents filed with the court before trial; the indictment states the range of more than $500 and less than $5,000. The trial court did not expressly rule on the request to cure the indictment.

{¶ 21} The value of the stolen property was a factual issue to be determined by the jury; the absence of detailed information in the indictment about the items alleged to be stolen was not grounds to "cure" the indictment. Turic more appropriately addressed this ambiguity through her request for a bill of particulars. The State provided detailed information about the stolen items when it provided the bill of particulars, which listed several unpaid items (the total retail value of which was over $500) that the customer was alleged to have taken in each of the transactions. When a trial court does not rule on a

---

[4] In her request for a bill of particulars, Turic also asked for clarification of "how the sum of $540.00" was calculated.

motion, we presume that the motion was overruled. The trial court did not err in implicitly overruling Turic's motion to cure the indictment.

{¶ 22} Turic contends that the case should have been dismissed because "evidence supported acquittal" and the value of the merchandise (i.e., that the value exceeded $500) was not established. However, the State did offer evidence – through the testimony of Pierce, video, and computer records – that Turic had assisted another individual in stealing merchandise from the store. Pierce also detailed the prices of various items seen in the customer's cart for which the store's computer system showed he had not been charged. The indictment alleged that the theft occurred between October 19 and October 26, 2009, and therefore there is no problem in introducing evidence from all these events. R.C. 2913.61(C)(4). According to Pierce's testimony at trial, the merchandise totaled approximately $900.

{¶ 23} We construe Turic's argument that the charges should have been dismissed as a challenge to the sufficiency of the evidence. A charge is supported by sufficient evidence when, construing the evidence in the light most favorable to the State, any rational finder of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 1997-Ohio-372, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. In light of this standard, Turic's focus on the evidence supporting acquittal, rather than the evidence supporting a conviction, was misplaced. Because a rational trier of fact could have concluded, based on the evidence presented, that Turic was guilty of theft, the trial court did not err in denying Turic's motion to dismiss.

**{¶ 24}** Turic also contends that there was insufficient evidence to establish that the fair market value of the stolen property was more than $500. Through Pierce's testimony and his documentation from the store's video recordings and computer records of the transactions in question, the State presented detailed evidence about the value of the items removed from the store. Pierce testified that various specific items ranging in price from $199.00 to $.19 had been in the customer's cart during the three transactions. He then recounted, in detail, which items had been scanned and paid for, which had been scanned and then voided, and which had never been scanned, to the extent that he could identify the items from the videotape and the computer records of the sales. Pierce's testimony, if believed by the jury, accounted for the theft of merchandise valued at "over $900," excluding items that he was unable to identify. Because the jury could have found, beyond a reasonable doubt, that the value of the stolen merchandise exceeded $500, Turic's conviction of a fifth degree felony was supported by sufficient evidence.

**{¶ 25}** Further, we reach the same conclusion if we view Turic's argument as asserting that her conviction was against the manifest weight of the evidence. "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson,* Montgomery App. No. 22581, 2009-Ohio-525, at ¶12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 26} The State presented testimony, video recordings, and computer evidence that Turic had repeatedly failed to scan or scanned and voided merchandise brought to her register by a particular customer, thereby allowing him to take unpaid merchandise from the store. Turic testified that the customer had paid for some of the merchandise at another register, but Pierce refuted this claim. Turic also suggested that she had somehow been the victim of a scam. Considering all of this evidence, the jury could have reasonably concluded that Turic's explanations for her actions were not credible and that she had been complicit in the theft. Thus, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in convicting Turic of theft.

{¶ 27} Next, Turic asserts that the trial court "should have instructed [the] jury on lawful arrest and complicity." She has advanced no argument, however, that her arrest was unlawful; it does not appear that an instruction on unlawful arrest was appropriate or warranted.

{¶ 28} With respect to complicity to commit theft, the court instructed the jury that it "must find beyond a reasonable doubt that *** the Defendant purposely aided or abetted another with purpose to deprive the owner of property and knowingly exerted control over the property by deception." R.C. 2923.03(A)(2), which defines complicity, states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall *** [a]id or abet another in committing the offense." Theft requires that one "knowingly obtain or exert control over *** property" without the consent of the owner, beyond the scope

of the consent, by deception, or by threat. R.C. 2913.02(A). The court's definition of complicity to commit theft was, if anything, a more stringent standard than was required for theft because it required the jury to find that Turic had acted purposefully in aiding another; under the theft statute (and thus complicity to commit theft), the jury need only to have found that she acted knowingly. Insofar as acting purposefully requires a higher degree of culpability than acting knowingly, Turic could not have been prejudiced by this instruction. See *State v. Carroll*, Clermont App. Nos. CA 2007-02-030 and CA 2007-03-041; 2007-Ohio-7075, ¶127.

{¶ 29} Turic's final argument under this assignment of error is that the case against her should have been dismissed because Officer Molnar's interview techniques "caused duress." Turic did not incriminate herself as a result of Officer Molnar's interview techniques, so we cannot conclude that "duress by law enforcement personnel [was used] to extract a confession of crime from an innocent person," as Turic claims.

{¶ 30} The second assignment of error is overruled.

IV

{¶ 31} Under her third assignment of error, Turic contends that she was denied the effective assistance of counsel because her attorney did not offer the testimony of an expert in surveillance recordings, did not present evidence of her good character and work ethic, did not present documentation of the prevalence of scams in retail establishments and particularly at Home Depot, and did not adequately prepare for the testimony of the State's witnesses. Turic also makes various statements in her brief about the inexperience of her attorney and difficulties she had in effectively communicating with her counsel.

{¶ 32} We review the alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id.

{¶ 33} Turic contends that an expert in surveillance recordings "would have changed the minds of the jury and their conclusion of guilt." We infer that she believes an expert would have helped to better identify the items in the customer's cart as he left Home Depot, thus refuting the "ever expanding value of the alleged stolen items."

{¶ 34} The quality of the video was poor, but it is not apparent that identification of the items in the cart related "to matters beyond the knowledge or experience possessed by lay persons." Evid.R. 702. Thus, even if such expert testimony had been offered, it is debatable whether the trial court would have allowed it. Because the content of the purported expert's testimony is unclear, we cannot conclude that it would have been admissible or that there is a reasonable probability that it would have affected the outcome of the case. We cannot find counsel ineffective for failing to offer this potential evidence.

{¶ 35} Turic also claims that her attorney should have offered evidence of her good character and work ethic, her incentive to keep her employment because she was about to

become eligible for health insurance, and her satisfactory job performance aside from the alleged incidents of theft. Although the defense did not offer such evidence, Pierce did testify that there had been no other security problems with Turic, such as shortages from her drawer or other unusual transactions, during her employment. Other Home Depot employees testified that Turic was friendly and pleasant at work. We cannot conclude that additional evidence along these lines would have affected the outcome of the case.

{¶ 36} Turic maintains that her attorney also should have offered into evidence a binder prepared by Home Depot's asset management department about the wide variety of cons and scams that are attempted or perpetrated in retail establishments, so as to bolster her testimony that she may have been the victim of such a scam. Even assuming that such an exhibit would have been admissible, it would not have established that Turic was the victim of a scam under the facts presented in this case. The jury would nonetheless have been required to assess whether her actions at the cash register, including her failure to scan numerous items and the deletion of other items, constituted complicity to commit theft. We cannot conclude that an exhibit about cons and scams would have affected the outcome of the case.

{¶ 37} Turic also faults her attorney for not pursuing an affirmative defense of accident and for failing to adequately prepare for the testimony of the State's witnesses by interviewing them before trial. But "accident" is not an affirmative defense; rather, because it suggests an "unintentional and unwilled" act, it implies a lack of criminal culpability. *State v. Wyatt*, Butler App. No. CA2010-07-171, 2011-Ohio-3427, ¶31, citing *State v. Poole* (1973), 33 Ohio St.2d 18, 20. Whether Turic intended to commit a theft offense or

accidentally failed to charge the customer for the items in his cart was thoroughly addressed in the evidence presented and the arguments to the jury. Turic has not shown how she was prejudiced by trial counsel's level of preparation for trial; in other words, it is not apparent how earlier or more thorough interviews with the witnesses or better attorney-client communications would have benefitted her case. Because in Ohio a properly licensed attorney is presumed competent, Turic's attorney's relative inexperience, without more, does not establish the ineffective assistance of counsel. See, e.g., *State v. Henry*, Lake App. No. 2007-L-142, 2009-Ohio-1138, ¶94. Accordingly, we cannot conclude that the outcome of the case would have been different if counsel had prepared in this way.

{¶ 38} Turic's third assignment of error is overruled.

V

{¶ 39} In her fourth assignment of error, Turic reiterates her argument that an expert witness on video surveillance could have prevented the jury from losing its way and concluding that she had assisted a customer in leaving with unpaid merchandise valued at more than $500. She seems to suggest that such an expert would have testified that fewer items actually left the store than the State claimed. We addressed this argument under the third assignment of error.

{¶ 40} Turic's fourth assignment of error is overruled.

VI

{¶ 41} Turic's fifth assignment of error challenges the bailiff's conduct during the trial. She claims that the bailiff was laughing in the jury room with the jurors, and he admitted that they (he and the jurors) had been laughing at her. She infers from these alleged

actions that the bailiff "consult[ed] and participate[d]" with the jury, that the jurors did not respect their role, and that they were biased against her. If such communication occurred, especially prior to the return of the verdict in open court, there could be presumptive prejudice. R.C. 2945.33; *State v. DiPietro*, Franklin App. No. 09AP-202, 2009-Ohio-5854, ¶16.

{¶ 42} However, the behavior in question is not reflected in the record, nor is there any indication in the record that such a concern was brought to the trial court's attention. On the record before us, we cannot conclude that the bailiff acted inappropriately or that his alleged actions prejudiced Turic.

{¶ 43} The fifth assignment of error is overruled.

VII

{¶ 44} At oral argument, Turic showed the video that was admitted at trial; she argued that it demonstrated confusion during the check-out process and that she had told the customer to take certain items (which had not been scanned) out of his cart before leaving the store. She argued that, based on the video and her testimony explaining what had happened, she should not have been found guilty, both because she did nothing wrong and, if she did, the value of the property was not over $500. Indeed, that is a conclusion the jury could have reached if it had chosen to believe different evidence than it did. However, our authority in reviewing a conviction is to examine the evidence admitted and the legal rulings to determine if there was error; we do not simply second guess a jury's verdict.

VIII

{¶ 45} The judgment of the trial court will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Elizabeth A. Ellis
Michelle M. Turic
Hon. Stephen A. Wolaver