[Cite as *State v. Turic*, 2011-Ohio-6713.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee               :         C.A. CASE NO. 2010 CA 56

v.                                     :         T.C. NO.    0902610B

MICHELLE M. TURIC                      :          (Criminal appeal from
                                                    Municipal Court)
    Defendant-Appellant              :

                                       :

. . . . . . . . . .

# O P I N I O N

Rendered on the ____23rd____ day of ___December____, 2011.

. . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. No. 0076747, 510 West Main Street, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

MICHELLE M. TURIC, Atty. Reg. No. 1563 Emmons Avenue, Dayton, Ohio 45410
    Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Michelle Turic appeals, pro se, from a judgment of the Fairborn Municipal Court, which found her guilty of resisting arrest after a trial to the court. The trial court sentenced Turic to ninety days in jail, with sixty days suspended, and imposed a fine of $200.

{¶ 2}  Turic was employed as a cashier at Home Depot in Beavercreek, Ohio.  In October 2009, Turic was accused by her employer of theft, based on the store's video recordings of sales transactions and its tracking of purchases through its computer system.  Specifically, she was accused of pretending to scan all of the items in a particular customer's cart when she had not actually done so, of voiding some of the items she did scan, and of allowing the customer to pay only a few dollars before leaving the store with a substantial amount of merchandise.  This conduct was alleged to have occurred in three separate transactions, all involving the same customer.

{¶ 3}  Home Depot's Asset Protection Manager, Jason Pierce, called the police after he confronted Turic about the suspicious sales and did not believe he received a satisfactory explanation from her.  Beavercreek Police Officer Scott Molnar responded to the store, and he questioned Turic about the incidents. Molnar also did not believe that Turic provided an adequate explanation.

{¶ 4}  When Officer Molnar asked Turic for her address and other identifying information, Turic refused to provide it.  She produced a student identification card, but this card did not contain the information Molnar had requested.  Based on her refusal to cooperate, Molnar was "not comfortable and did not trust that if [he] gave her a summons to appear in court that she would do so."  He decided to arrest Turic.

{¶ 5}  Turic was placed in handcuffs without incident; however, when Officer Molnar explained that he would need to pat Turic down for weapons before placing her in his cruiser, she objected.  Turic insisted that Molnar call a female officer, but

Molnar explained that none was on duty at that time. Turic also suggested that the store manager, who was a woman, be permitted to conduct the search. Molnar refused, stating that he was unwilling to allow an untrained person to do the search required before he could place her in his cruiser. According to Molnar, when he proceeded with the search and began to pat under Turic's breast, she "jerked around" and "pushed back in a violent uncooperative manner," "pushing" into Molnar. Molnar told Turic at least three times to stop resisting his attempt to pat her down for weapons. He eventually managed to complete the pat-down and took Turic to the police station.

{¶ 6} Turic was charged with obstructing official business and resisting arrest. She pled not guilty to both offenses. Following a bench trial in the Fairborn Municipal Court, she was found guilty of resisting arrest and not guilty of obstructing official business. She was sentenced as described above. In separate proceedings, Turic was convicted of theft from Home Depot following a jury trial in the Greene County Court of Common Pleas. (Greene C.P. No. 09CR692.) We affirmed this conviction on appeal. *State v. Turic*, Greene App. No. 2010 CA 35, 2011-Ohio-3869.

{¶ 7} Turic raises one assignment of error on appeal.

{¶ 8} "DEFENDANT-APPELLANT CHALLENGES THE SUFFICIENCY OF THE EVIDENCE IN THE TRIAL COURT[']S CONVICTION OF RESISTING ARREST. DEFENDANT-APPELLANT DID NOT RESIST ARREST; HOWEVER [SHE] DID HAVE HER IV AMENDMENT OF THE U.S. CONSTITUTION'S RIGHT TO UNREASONABLE SEARCH VIOLATED."

{¶ 9} Turic claims that there was insufficient evidence to support her conviction for resisting arrest because both of the State's witnesses testified that she was cooperative up to and through the point at which she was placed in handcuffs. She asserts that her arrest was complete at that point and that any force or recklessness exhibited beyond that point in time "could no longer be considered *** the offense of resisting arrest."

{¶ 10} R.C. 2921.33(A) defines resisting arrest as follows: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

{¶ 11} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶ 12} Turic's argument that her conviction was supported by insufficient evidence is based on her belief that her arrest was complete when she was handcuffed, and therefore any events that transpired after she was handcuffed did

not affect her arrest and did not constitute "resisting arrest." She relies on the definition of an "arrest" set forth in *State v. Darrah* (1980), 64 Ohio St.2d 22, 26, and *State v. Caldwell* (Dec. 19, 2000), Morgan App. No. CA00–5, neither of which involved an offense of resisting arrest. We will focus our analysis on *Darrah*, because *Caldwell* relies on *Darrah*.

{¶ 13} *Darrah* involved a truck driver's claim that he had been illegally arrested for failing to obey a traffic control device instructing him to enter a weigh station; his argument that his arrest was illegal was based upon the fact that the misdemeanor offense for which he was stopped was not personally witnessed by the arresting officer, but was reported to the officer by workers at the weigh station. In addressing Darrah's argument that his arrest had been illegal, the supreme court concluded that Darrah had not, in fact, been arrested. Id. at 26. It also set forth an "often-cited four-factor test" for when an arrest has been completed. *State v. Bay* (1998), 130 Ohio App.3d 772, 775. *Darrah* held that "[a]n arrest occurs when the following four requisite elements are involved: (1) [a]n intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *Darrah*, 64 Ohio St.2d at 26. (Citations omitted.)

{¶ 14} We have previously considered and rejected the argument that *Darrah*'s analysis of when an "arrest" has occurred compels the conclusion that one cannot be convicted of resisting arrest for events that occur after police officers have exerted some degree of physical control over an arrestee. We addressed this issue in *State v. Cole*, Miami App. No. 2009 CA 20, 2010-Ohio-1608, which

relied on *Bay*, a case from the First Appellate District. In *Bay*, the defendant refused to walk from the cruiser to the processing center and then went limp and fell on the ground after walking a short distance toward the building.

{¶ 15} In *Cole*, we stated:

{¶ 16} "'While the *State v. Darrah* test does not, by itself, resolve the question of whether a formal arrest ends once the four factors are demonstrated, in the very next sentence, the Supreme Court noted, "Furthermore, an arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." [*Darrah*], 64 Ohio St.2d at 26, *** A formal arrest, therefore, is "not necessarily an instantaneous event," *State v. Bolden* (1990), 104 Ore.App. 356, 359, 801 P.2d 863, 864, but rather is a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime. Therefore, before a defendant is formally charged, temporal and spatial limits are factual issues from which the trier of fact determines whether the arrest is complete.'

{¶ 17} "The First District *** found that the State had presented evidence from which reasonable minds could find that 'the officers were still engaged in completing the formal charging process, thus precluding an entry of judgment of acquittal.' Id. See, also, *Cleveland v. Ellsworth,* Cuyahoga App. No. 83040, 2004-Ohio-4092, ¶42 (affirming defendant's conviction for resisting arrest where the defendant was uncooperative during the booking process, force had to be used to remove the defendant's shoes, the defendant attempted to grab his money when

the officer was counting it for inventory purposes, and eventually the defendant had to be wrestled to the ground).

{¶ 18} "We find this rationale to be persuasive and applicable to the facts in this case [where Cole became belligerent after he had been arrested, while police officers were attempting to process him at the police station].   *** Given the totality of the circumstances and especially because the resistance occurred while the officers were in the course of their booking procedures, we conclude that Cole's acts of resistance occurred, for purposes of the resisting arrest statute, during the course of his arrest.   Accordingly, the State's evidence was sufficient to support Cole's conviction for resisting arrest ***."   *Cole* at ¶39-41. (Some internal citations omitted.)

{¶ 19} Based on our holding in *Cole*, we reject Turic's argument that her arrest was completed when she was placed in handcuffs at Home Depot.   Other steps "necessary to effect the formal charging of a crime" are encompassed within the process of an arrest for purposes of resisting arrest.   *Cole* at ¶39, quoting *Bay*, 130 Ohio App.3d at 775.   Turic's refusal to allow Officer Molnar to search her for weapons so that she could be transported to the police station occurred during this process.   The trial court's conclusion that Turic resisted arrest was supported by sufficient evidence.

{¶ 20} We acknowledge Turic's legitimate objection to being searched by a male officer; it was undoubtedly unpleasant and embarrassing.   However, "[c]ourts have repeatedly held that a pat-down search incident to a lawful arrest conducted by an officer of the opposite sex, does not, absent additional evidence of improper

conduct during the search, convert a lawful search incident to arrest into an unlawful one." *Burke v. Cicero Police Dept.* (N.D.N.Y, March 31, 2010), Case No. 507-CV-624 (internal citations omitted). Rather, it must be analyzed under a reasonableness standard based on the information available to the officers and the situation when the conduct occurred. *Raines v. Chenoweth* (S.D. Ind., March 30, 2005), Case No. 1:03CV1289-JDT-TAB (internal citations omitted). It does not appear from the record that any reasonable alternative was available or that Officer Molnar failed to follow departmental policy; the pat-down was part of the arrest process.

{¶ 21} Turic also relies on *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, in arguing that Officer Molnar acted unreasonably in searching her for weapons, because he did not have a reasonable suspicion that he was dealing with an armed and dangerous individual. *Terry*, however, applies to investigatory stops, where probable cause for an arrest does not yet exist. "A search incident to an arrest is not limited in scope by the absence of probable cause to believe that evidence will be found, or by the limitations applicable to a weapons frisk pursuant to *Terry* \*\*\*." *State v. Tillman* (Sept. 30, 1993), Montgomery App. No. 14060. The justification to search incident to a lawful arrest rests as much on the need to disarm the suspect in order to take her into custody as it does on the need to preserve evidence for later use at trial. "The standards traditionally governing a search incident to lawful arrest are not, therefore, commuted to the stricter *Terry* standards by the absence of probable fruits or further evidence of the particular crime for which the arrest is made." Id., citing *United States v. Robinson* (1973),

414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. For these reasons, for his own safety, Molnar was permitted to search Turic for weapons incident to her arrest, regardless of whether he had a reasonable articulable suspicion that she possessed weapons.

{¶ 22} The assignment of error is overruled.

{¶ 23} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Betsy A. Deeds
Michelle M. Turic
Hon. Beth W. Root