[Cite as *In re B.M.*, 2012-Ohio-6221.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN RE: B.M.                                    :

                                               :      C.A. CASE NOS. 25093 and 25206

                                               :      T.C. NOS.   A-2011-9523-OE
                                               :                  JC2012-0678-02

                                               :      (Civil appeal from Common
                                                        Pleas Court, Juvenile Division)
                                               :

· · · · · · · · · ·

# O P I N I O N

Rendered on the ___31st___ day of ___December___, 2012.

· · · · · · · · · ·

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MELISSA REPLOGLE, Atty. Reg. No. 0084215, 2312 Far Hills Avenue, #145, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

        {¶ 1}  B.M. appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which adjudicated B.M. to be a delinquent child for resisting arrest in Case No. JC 2012-678 and found that B.M. had violated the terms of his

probation and suspended commitment in Case No. JC 2011-9523. The court ordered that Case No. JC 2012-678 be "admonished and closed," and that B.M. be committed to the custody of the Department of Youth Services in Case No. JC 2011-9523 for a minimum of six months and a maximum not to exceed his 21st birthday. B.M. appeals.

{¶ 2} For the following reasons, the judgment of the juvenile court will be reversed as to the adjudication for resisting arrest, and it will be reversed and remanded for further proceedings with respect to B.M.'s violations of probation and the terms of suspended commitment.

I

{¶ 3} In January 2012, B.M., age 16, was charged with criminal damaging, domestic violence, and resisting arrest (Case No. JC 2012-678). B.M. was also charged with violations of probation and the terms of his suspended commitment, based on conditions imposed in a prior case (Case No. JC 2011-9523); in the earlier case, B.M. had been adjudicated a delinquent based on the trial court's finding that he had committed menacing by stalking, a felony of the fourth degree. The juvenile court held an adjudicatory hearing in February 2012 and found B.M. delinquent for resisting arrest; the juvenile court granted B.M.'s motion to dismiss the criminal damaging and domestic violence charges due to insufficient evidence. The court also found that B.M. had violated his probation and the terms of his suspended commitment in the earlier case. B.M. was sentenced as described above.

II

{¶ 4} B.M. appeals, raising two assignments of error. The first assignment of

error states:

**The State failed to prove beyond a reasonable doubt that B.M. committed the charge of resisting arrest and the court's finding of responsibility is a manifest miscarriage of justice.**

{¶ 5}     B.M. contends that his adjudication for resisting arrest was supported by insufficient evidence and was against the manifest weight of the evidence.

{¶ 6}     A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12.

{¶ 7}     R.C. 2921.33(A) defines resisting arrest as follows: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." In order to show a "lawful arrest," the State must prove that there was a reasonable basis to

believe an offense was committed for which the defendant could be lawfully arrested, but the State need not prove beyond a reasonable doubt the elements of the underlying offense for which the arrest was being made. *State v. Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶ 29; *State v. Dumas*, 8th Dist. Cuyahoga No. 89070, 2007-Ohio-5724, ¶ 22.

{¶ 8} One acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C). One acts by force when one uses "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶ 9} With respect to the sufficiency of the evidence, B.M. argues that the State failed to prove that he was under arrest at the time of the actions in question and, alternatively, that if he were under arrest, the State failed to prove that he had resisted arrest recklessly or by force.

{¶ 10} The State's evidence established the following facts.

{¶ 11} On January 26, 2012, Miami Township Police Officer Robert Sakal responded to a call of domestic violence and criminal damaging at 2114 Mattis Drive; he was given the name of the suspect (B.M.), as well as a physical description. As he neared the home, Sakal saw B.M., who was known to him from prior encounters and who matched the physical description Sakal had been given. B.M. did not stop when Sakal called to him from his cruiser. When Sakal parked and exited the cruiser, blocking B.M.'s path, B.M. asked why he was being stopped and asked Sakal to stop hassling him. Sakal informed

B.M. that B.M. was being detained for investigation of domestic violence and criminal damaging complaints. According to Sakal, B.M. was not under arrest at that point, and Sakal informed B.M. of this fact.

{¶ 12} At the cruiser, while Sakal gave B.M. a "quick pat down" for weapons in preparation for transporting him back to the house, B.M. called Sakal names and threatened to "beat [Sakal's] ass." B.M. also tried to turn or "pull away" from Sakal as Sakal patted him down from behind. Sakal interpreted B.M.'s movements as an "aggressive action" or threat, so Sakal pinned B.M. against the cruiser and handcuffed him. Sakal then reported to dispatch that B.M. was being disorderly. Sakal testified that he had decided to take B.M. into custody as soon as B.M. started making threats. B.M. did not make any other physical movements toward Sakal. B.M. was placed in the cruiser and taken to the juvenile detention facility.

{¶ 13} B.M. also testified at the hearing. B.M. stated that he was walking to see his probation officer when Sakal stopped him, that he had not heard Sakal call to him from the cruiser, and that the cruiser window had been closed. B.M. admitted to asking Sakal why he was being "harassed," but testified that during their encounter, Sakal had "immediately" grabbed his arm and put handcuffs on him. B.M. admitted that he had turned his head to ask a question while being searched, but he denied that he had turned in a threatening way. B.M. stated that he called Sakal names and threatened him only after he had been handcuffed and placed in the cruiser.

{¶ 14} "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by

an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980); *State v. Turic*, 2d Dist. Greene No. 2010 CA 56, 2011-Ohio-6713, ¶13. The evidence must show that the subject of an arrest should reasonably have understood that such a seizure occurred. *State v. Hatch*, 2d Dist. Montgomery No. 18986, 2002 WL 10449 (Jan. 4, 2002).

{¶ 15} The State's evidence established that, when Sakal stopped B.M., Sakal intended to detain B.M. for further investigation, and Sakal informed B.M. of this fact. As Sakal frisked B.M. from behind, B.M. began to threaten Sakal and "pulled away" or turned "a little bit" in a way that Sakal found threatening. According to Sakal's testimony, B.M.'s threats occurred simultaneously with the pat down. As a result of the threats, Sakal changed his mind about the detention and decided to arrest B.M. instead, but Sakal did not communicate to B.M. that he was under arrest.

{¶ 16} Although we understand why Sakal might have felt threatened by B.M.'s movement, coupled with his verbal threats, we see no basis to conclude that B.M. knew he was under arrest when he turned during the pat down. Even Sakal admitted that he (Sakal) did not decide to arrest B.M. until B.M. threatened to assault Sakal. Thus, even if the threat might have constituted resisting arrest under other circumstances, Sakal admitted that B.M. was only being detained, not arrested, when the threat was made. Because a reasonable person in B.M.'s position would not have known he was under arrest, the State failed to establish one of the requisite elements of an arrest. B.M. could not have resisted arrest if he did not know he was under arrest.

{¶ 17} Moreover, even if we were to conclude that the State had proven that B.M.

knew or should have known that he was under arrest, B.M.'s conviction would be supported by insufficient evidence because the State failed to establish that B.M. resisted or interfered with an arrest "recklessly or by force," as required under R.C. 2921.33(A). The State does not argue that B.M. acted recklessly; it contends that B.M.'s turning or pulling away during the pat down constituted the use of force. But Sakal and B.M. each testified that B.M. did not touch Sakal or inflict any physical injury on him. We cannot conclude that B.M.'s turning toward Sakal, purportedly to ask a question about the reason for his detention or to call Sakal a name, constituted "violence, compulsion, or constraint physically exerted by any means" against Sakal.

{¶ 18}    For these reasons, we agree with B.M.'s argument that his conviction was supported by insufficient evidence and must be vacated. As such, we need not address his argument that his conviction was against the manifest weight of the evidence.

{¶ 19}    The first assignment of error is sustained.

III

{¶ 20}    B.M.'s second assignment of error states:

**B.M.'s adjudication for violation of probation and suspended commitment was not supported by sufficient evidence.**

{¶ 21}    B.M. contends that, if his conviction for resisting arrest was supported by insufficient evidence, then the trial court's finding that he had violated the terms of his probation and the terms of his suspended commitment was also against the manifest evidence.

{¶ 22}    It is not clear from the record that the juvenile court's findings of violations

of probation and the terms of suspended commitment in Case No. JC 2011-9523 were based solely on its finding that B.M. had resisted arrest in Case No. JC 2012-678. The complaint in Case No. JC 2011-9523 for violations of probation and suspended commitment stated three bases for the complaint: B.M. had violated curfew, B.M. had failed to meet with his probation officer, and B.M. had violated his suspended commitment by being arrested on three new complaints. Two of the new charges were dismissed, and we have found that the third charge, resisting arrest, was supported by insufficient evidence. However, the juvenile court could have nonetheless concluded that B.M. violated his probation and the terms of his suspended commitment by violating curfew and/or failing to meet with his probation officer, as alleged in the complaint.

**{¶ 23}** The juvenile court's dispositional order regarding the violations of probation and the terms of suspended commitment merely referred to B.M.'s prior adjudication as a delinquent and stated that "the child could benefit from being committed to the legal custody of [DYS] for care and rehabilitation and that said commitment is the least restrictive form of treatment which is appropriate." Because we cannot determine, on this record, whether the juvenile court's finding that B.M. had violated his probation and the terms of his suspended commitment was based entirely on his adjudication for resisting arrest in Case No. JC 2012-678 (which would be improper in light of our finding that resisting arrest was supported by insufficient evidence) or was based on other legitimate considerations related to the terms of the court's prior orders, we will also reverse the trial court's judgment in Case No. JC 2011-9523, and remand this matter to the juvenile court for further proceedings. Upon remand, the juvenile court shall determine, without

consideration of the resisting arrest adjudication, whether B.M. violated his probation and the terms of his suspended commitment by violating curfew and/or failing to meet with his probation officer, and enter an appropriate new judgment on the basis of its findings. Any appeal of that judgment will require the filing of a new notice of appeal.

{¶ 24} The second assignment of error is sustained.

{¶ 25} The judgment of the juvenile court in Case No. JC 2012-678 will be reversed insofar as it found that B.M. had resisted arrest. The judgment in Case No. JC 2011-9523 will be reversed, and the matter is remanded to the juvenile court for further proceedings consistent with this opinion.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Michele D. Phipps
Melissa Replogle
Hon. Nick Kuntz