[Cite as *State v. Andrews*, 2014-Ohio-2954.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA22 |
| v. | : | |
| | | DECISION AND |
| JAMES R. ANDREWS, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 06/24/2014 |

APPEARANCES:

David A. Sams, West Jefferson, Ohio, for Appellant.

Paul G. Bertram, III, City of Marietta Law Director, Marietta, Ohio, for Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, James R. Andrews ("Andrews"), appeals his conviction in the Marietta Municipal Court for the offense of resisting arrest in violation of R.C. 2921.33. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} On December 16, 2011, Deputy Underwood and Sergeant Hornbeck of the Washington County Sheriff's Office were dispatched to the home of Terri McGoye to respond to a complaint of domestic violence. Once the officers arrived at the home, McGoye alleged that Andrews, her son, had pushed her against a wall and struck her in the chest earlier that evening. Andrews resided at the home, in an upstairs bedroom, with his girlfriend. The officers then made contact with Andrews in his upstairs bedroom and asked him to place his hands above his head and to exit the bedroom towards Deputy Underwood. Once Andrews exited his bedroom, Deputy Underwood ordered that he place his hands behind his back. Andrews did not comply with the

order, even though he had been asked to place his hands behind his back at least twice. At that time, Andrews was forcibly taken down to the floor; and the officers attempted to handcuff him. Andrews did not cooperate and the officers used a taser on him two times. Andrews was eventually handcuffed, taken into custody, and criminal complaints were filed charging him with the following offenses: domestic violence in violation of R.C. 2919.25(A); resisting arrest in violation of R.C. 2921.33(A); and obstructing official business in violation of R.C. 2921.31.

{¶ 3} The case proceeded to jury trial, and after the presentation of the State's case, Andrews moved for a directed verdict of acquittal pursuant to Crim.R. 29. The trial court granted Andrews' motion for acquittal as to the obstructing official business charge, but ruled that sufficient evidence had been presented in regards to the domestic violence and resisting arrest charges. Andrews, through counsel, then presented his defense and rested. After deliberations, the jury returned a verdict of not guilty on the domestic violence charge, and a verdict of guilty on the resisting arrest charge. The verdict was journalized and Andrews was sentenced on the resisting arrest conviction; but the trial court stayed execution of the sentence pending this appeal.

{¶ 4} On appeal, Andrews asserts the following assignments of error:

First Assignment of Error:

> THE DEFENDANT-APPELLANT'S CONVICTION FOR RESISTING
> ARREST WAS BASED ON INSUFFICIENT EVIDENCE CONTRARY TO
> OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

Second Assignment of Error:

> THE DEFENDANT-APPELLANT'S CONVICTION AND SENTENCE FOR
> RESISTING ARREST IS CONTRARY TO THE RULE OF REQUIRED
> MERGER UNDER R.C. 2941.25(A) AND THE RULE AGAINST DOUBLE
> JEOPARDY UNDER THE STATE AND FEDERAL CONSTITUTIONS.

{¶ 5} In his first assignment of error, Andrews contends that there was insufficient evidence to support his conviction for resisting arrest. Specifically, Andrews argues that because he was never told he was being placed under arrest, "there was no affirmative showing of actual knowledge on his part that he was being so arrested." Thus, Andrews asserts that he was merely being detained, and so, there was insufficient evidence to support a charge of resisting arrest.[1]

{¶ 6} "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt." *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 7} Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution. *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 8} Andrews was convicted of violating R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or

---

[1] In his appellate briefs, Andrews concedes that the officers had a reasonable basis to arrest him for domestic violence; but he maintains that he was never advised that he was being placed under arrest, and did not know he was being placed under arrest. He does not contest any other elements of the offense.

another." Here, Andrews contends that the State failed to present any evidence at trial that he was ever lawfully placed under arrest. Notably, in his brief, Andrews does not challenge whether an arrest for domestic violence would have been proper under the circumstances. Andrews merely argues that he was unaware that he was being placed under arrest.

{¶ 9} "Arrest involves four elements: '(1) [a]n intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, * * * (4) which is so understood by the person arrested.' " *State v. Burns*, 5th Dist. Coshocton No. 2013CA0005, 2013-Ohio-4498, ¶ 11, quoting *State v. Carroll,* 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843, ¶ 8 (1st Dist.), quoting *State v. Darrah,* 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980), citing *State v. Terry,* 5 Ohio App.2d 122, 128, 214 N.E.2d 114 (8th Dist.1966). Thus, inter alia, to obtain a conviction for resisting arrest, the evidence must show that the subject of the arrest knew, or reasonably should have known, that he was under arrest. *Id.*, citing *State v. Deer,* 6th Dist. Lucas No. L–06–1086, 2007–Ohio–1866, ¶ 33; *In re B.M.*, 2d Dist. Montgomery Nos. 25093, 25206, 2012-Ohio-6221, ¶ 14, citing *State v. Hatch,* 2d Dist. Montgomery No. 18986, 2002 WL 10449, *4 (Jan. 4, 2002).

{¶ 10} In the case sub judice, Sergeant Hornbeck testified that he was dispatched to the McGoye residence to respond to a domestic violence complaint. He was advised by dispatch that the suspect, Andrews, had retreated to an upstairs bedroom and was gathering homemade weapons. After speaking briefly with Terri McGoye, Sergeant Hornbeck made contact with Andrews in the upstairs bedroom. Sergeant Hornbeck then asked Andrews if he had any weapons on his person, to which, Andrews produced a utility knife. Sergeant Hornbeck also saw part of a metal bedframe on a couch in the bedroom. Sergeant Hornbeck testified that he then ordered Andrews to place his hands above his head and to exit the bedroom towards Deputy

Underwood. Andrews complied with this order. Sergeant Hornbeck testified that once Andrews was outside the bedroom, Deputy Underwood ordered him to place his hands behind his back at least a couple of times. Andrews then grabbed a doorframe and refused to let go. Sergeant Hornbeck testified that he and Deputy Underwood then forcibly took Andrews to the floor, and attempted to handcuff him. Andrews continued to resist, and Sergeant Hornbeck then deployed his X-26 Taser. Sergeant Hornbeck testified that he and Andrews then fell down the stairs to the first floor of the residence. At that time, Sergeant Hornbeck initiated a second "shock" with his taser. On cross-examination, Sergeant Hornbeck testified that he never verbally said that he was placing Andrews under arrest, even though that was his intention in ordering him to exit the room towards Deputy Underwood. On re-direct, he testified that he did not announce his intention to place Andrews under arrest because he was worried about the safety of the individuals involved given the confined space, the accessibility of weapons in the room, and the presence of Andrews' girlfriend in the bedroom. "The safest way to do it was to get him in handcuffs first; search him for additional weapons; and then take him into custody."

{¶ 11} Deputy Underwood testified that during his interaction with Andrews, he stood in the doorway of the bedroom and never entered the room. He testified that after confiscating the utility knife, Sergeant Hornbeck instructed Andrews to raise his hands above his head and to walk out into the hallway. Andrews complied with that order, and when he reached the doorway, Deputy Underwood ordered him to put his hands behind his back. Deputy Underwood testified that he ordered him to put his hands behind his back "[f]our or five times." Andrews did not comply with Deputy Underwood's order, but rather grabbed the top of a nearby doorframe. Deputy Underwood testified that at that time, he and Sergeant Hornbeck took Andrews to the floor where Andrews continued to resist their efforts to handcuff him by laying on top of his

arms. Deputy Underwood also corroborated Sergeant Hornbeck's earlier testimony that the taser was used twice, and that he, Sergeant Hornbeck, and Andrews all "went skipping down the steps" to the first floor of the residence. After the second taser shock, Andrews was handcuffed. On cross-examination, Deputy Underwood testified that during the incident, nobody told Andrews that he was under arrest.

{¶ 12} Terri McGoye testified that while she did not see the interaction between the officers and Andrews, she heard the officers order him to turn around and place his hands behind his back three times. Stephen McGoye, Andrews' step-father, testified that while he was downstairs and did not see the interaction of Andrews with the officers, he heard the officers order Andrews to put his hands behind his back two or three times.

{¶ 13} Each officer had also tape recorded the incident, and portions of the audio recordings were played before the jury and admitted into evidence. In one of the audio recordings, the officers can be heard ordering Andrews to "turn around" four times, to "put [his] hands behind [his] back" thirteen times, to "get on the ground" two times, to "roll over" five times, and to "stop resisting" two times. At the beginning of one recording, Andrews says "Dude, I can walk out of here[,]" to which Deputy Underwood replies "No, you don't even want to go there."

{¶ 14} Andrews also testified in his own defense at trial. Andrews testified that he did not hit or push his mother, and that he did not know that he was being arrested. He testified that when asked to place his hands behind his back, he put one hand behind his back and the officers put a handcuff on that hand. He further testified that at that time he lost his balance and hit his head on a door. He then testified that he grabbed the door to regain his balance, but the door was knocked loose from its frame. He then fell to the floor, and was bent over the steps with his arms

underneath his body. He testified, that after he fell to the floor, he only remembered "bits and pieces."

{¶ 15} Based on the foregoing circumstances, we conclude that there was sufficient evidence that Andrews knew, or reasonably should have known, that he was under arrest. Sergeant Hornbeck clearly ordered him to exit the room with his hands above his head. Once outside of the bedroom, in a safer space, Deputy Underwood ordered Andrews to turn around and to place his hands behind his back. Several witnesses testified that they heard Deputy Underwood make this order at least two times. It is also clear from the audio recording that the officers continually made demands to which Andrews did not comply, and that the officers attempted to handcuff Andrews who refused to comply. Also, at one point during the encounter the officers made clear to Andrews that he was not free to leave. A struggle ensued in which both officers took Andrews to the floor, and Andrews was instructed to "roll over," to "put his hands behind his back," and to "stop resisting" over and over again. Although the officers did not announce that Andrews was "under arrest," a reasonable person in Andrews' position would have known they were under arrest. A statement articulating arrest is not necessary where an arrest may be inferred from the circumstances. *See In re S.C.W.*, 9th Dist. Summit No. 25421, 2011-Ohio-3193, ¶ 30 ("We have said, and other districts have concurred, that a statement articulating arrest is not necessary, but rather an arrest may be inferred from the circumstances."); *City of Warren v. Culver*, 11th Dist. Trumbull No. 2003-T-0023, 2004-Ohio-333, ¶ 18 ("[T]he magic words 'you are under arrest' are not necessary to constitute an arrest."). Accordingly, we find that Andrews' conviction is not against the sufficiency of the evidence because, after viewing the evidence in a light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime of resisting arrest proven beyond a reasonable doubt.

{¶ 16} In his reply brief, Andrews also contends that the arrest was deficient under R.C. 2935.07, because the officers did not inform him that they were placing him under arrest.

{¶ 17} R.C. 2935.07 states: "When an arrest is made without a warrant by an officer, he shall inform the person arrested of such officer's authority to make the arrest and the cause of the arrest." However, "[w]hen probable cause exists for an arrest by a police officer, the failure to notify the accused of the cause of his arrest does not render the arrest illegal if he is notified of the offense with which he is charge[d] soon after he is taken into custody." *Culver* at ¶ 16, citing *State v. Fairbanks*, 32 Ohio St.2d 34, 41, 289 N.E.2d 352 (1972).

{¶ 18} Here, criminal complaints charging Andrews with domestic violence, resisting arrest, and obstructing official business were completed the same day of the incident. Moreover, Deputy Underwood prepared an affidavit of facts in support of the complaints. Andrews was provided these documents. Thus, the officers complied with R.C. 2935.07. Accordingly, because Andrews knew or should have known that he was under arrest, and because the arrest was otherwise lawful, Andrews' first assignment of error is overruled.

{¶ 19} In his second assignment of error, Andrews contends that the obstructing official business and resisting arrest charges, under the facts of the case, are allied offenses of similar import, which must merge. Thus, he argues that "[g]iven their allied legal nature and involving the same conduct, the directed verdict of acquittal on the obstruction charge barred a subsequent conviction for resisting under res judicata/collateral estoppel/jeopardy."

{¶ 20} Andrews' merger argument is misplaced. Under Ohio law, "[w]here the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar

import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). But "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

{¶ 21} R.C. 2941.25 "codified the judicial doctrine of merger" and "prohibited the 'cumulative punishment of a defendant for the same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed.' " *State v. Ware,* 63 Ohio St.2d 84, 86, 406 N.E.2d 1112 (1980), quoting *State v. Roberts,* 62 Ohio St.2d 170, 172–173, 405 N.E.2d 247 (1980); *see also State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 83 ("R.C. 2941.25 'codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibit[ ] multiple punishments for the same offense.' "). The Supreme Court of Ohio has "consistently recognized that the purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple findings of guilt and corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence." *State v. Johnson,* 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, ¶ 43.

{¶ 22} In other words, upon finding one or more counts to constitute two or more allied offenses of similar import, R.C. 2941.25(A) requires that the convictions be merged *for the purposes of sentencing* and that the defendant only be sentenced on one of the counts. *State v. Whitfield,* 124 Ohio St.3d 319, 2010–Ohio–2, 922 N.E.2d 182, ¶ 5.

{¶ 23} Here, Andrews was only sentenced on the resisting arrest charge, because he had been acquitted of the obstructing official business charge. Thus, he did not receive multiple punishments for the same offense, and the merger doctrine is not applicable.

{¶ 24} We also disagree with Andrews' contention that his acquittal of the obstruction charge barred a subsequent conviction for resisting arrest under the Double Jeopardy Clause.

{¶ 25} The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."[2] Thus, the Double Jeopardy Clause prohibits: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 10.

{¶ 26} The Supreme Court of Ohio has applied the so-called "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether two offenses are the same or whether each is a separate offense for double jeopardy purposes. *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 18.

{¶ 27} The *Blockburger* court explained the test as follows:

* * * The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. * * *

*Blockburger* at 304.

---

[2] The Double Jeopardy Clause was made applicable to the states through the Fourteenth Amendment. *State v. Tolbert*, 60 Ohio St.3d 89, 90, 573 N.E.2d 617 (1991). Moreover, Article 1, Section 10, of the Ohio Constitution provides: "No person shall be twice put in jeopardy for the same offense."

{¶ 28} "A single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *State v. Best*, 42 Ohio St.2d 530, 330 N.E.2d 421 (1975), at paragraph three of the syllabus. "This test focuses upon the elements of the two statutory provisions, not upon the evidence proffered in a given case." *State v. Thomas*, 61 Ohio St.2d 254, 259, 15 O.O.3d 262, 400 N.E.2d 897 (1980), overruled on other grounds in *State v. Crago*, 53 Ohio St.3d 243, 559 N.E.2d 1353 (1990), syllabus. Thus, the "same elements" test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

{¶ 29} Here, Andrews was acquitted, via directed verdict, of obstructing official business. R.C. 2921.31(A) provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." The crime for which Andrews was convicted, resisting arrest, provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." R.C. 2921.33(A).

{¶ 30} The elements of R.C. 2921.31(A) and 2921.33(A) differ. *See City of Cleveland Heights v. Veasley*, 8th Dist. Cuyahoga No. 38053, 1978 WL 208077, *2 (Dec. 14, 1978) (comparing municipal ordinances with identical language to the revised code statutes). Most notably, the culpable mental state required by each offense is different. Obstructing official business must be done purposefully; whereas, resisting arrest only recklessly. Thus, under the

"same elements" test discussed *supra*, because obstructing official business and resisting arrest contain different elements, Andrews' prosecution for resisting arrest was not a successive prosecution and did not violate the Double Jeopardy Clause.

{¶ 31} Andrews also argues that his conviction for resisting arrest is barred by the doctrine of collateral estoppel. Collateral estoppel is a concept that has been judicially integrated into double jeopardy analysis. *Ashe v. Swenson*, 397 U.S. 436, 443-446, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970). "It is clear from a review of the case law applying the rule of collateral estoppel in criminal cases that collateral estoppel will preclude successive prosecutions for separate but related offenses only in those situations where the second prosecution requires the relitigation of ultimate factual issues which have been previously resolved against the state and *in favor of the accused* in the first prosecution." (Emphasis sic.) *State v. Starcher*, 21 Ohio App.3d 94, 95-96, 487 N.E.2d 319 (9th Dist.1984); *see also Ashe* at 443 (Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.").

{¶ 32} In the instant case, there was never a second prosecution, or a relitigation of the issues between the parties. Rather, Andrews was acquitted of the obstructing offense at the conclusion of the State's case, via a Crim.R. 29 motion. In other words, the State had already presented the evidence necessary to convict Andrews on the resisting arrest charge at the time that the he was acquitted of the obstructing official business charge. Moreover, there was never a determination of the ultimate factual issues in favor of Andrews. The trial court simply determined that insufficient evidence had been presented to support a claim of obstructing official business. Accordingly, we cannot conclude, under the facts and circumstances of this

case, that collateral estoppel precluded Andrews' conviction on the charge of resisting arrest.

Andrews' second assignment of error is overruled.

{¶ 33} Based on the foregoing, Andrews' assignments of error are overruled, and the trial

court's judgment is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P. J. & McFarland, J.: Concur in Judgment & Opinion.

For the Court

By:_____
Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.